UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ROBERT GOSS, Individually and on Behalf of
All Others Similarly Situated,
375 E. Henry Avenue
Cudahy, Wisconsin 53110,

        Plaintiff,

    v.

ROADRUNNER TRANSPORTATION
SYSTEMS, INC.,
4900 S. Pennsylvania Ave.
Cudahy, Wisconsin 53110,

MARK A. DIBLASI, and
c/o Roadrunner Transportation Systems, Inc.
4900 S. Pennsylvania Ave.
Cudahy, Wisconsin 53110,

PETER R. ARMBRUSTER,
c/o Roadrunner Transportation Systems, Inc.
4900 S. Pennsylvania Ave.
Cudahy, Wisconsin 53110,

        Defendants.

Case No.

<u>CLASS ACTION</u>

<u>JURY TRIAL DEMANDED</u>

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff Robert Goss ("Plaintiff") alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Roadrunner Transportation Systems, Inc. ("Roadrunner" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federa1 securities class action on beha1f of all investors who purchased or otherwise acquired Roadrunner common stock between May 8, 2014, and January 30, 2017, inclusive (the "Class Period").

2. This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

## JURISDICTION AND VENUE

3. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. § 77v).

5. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

1

6.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

7.     Plaintiff purchased Roadrunner common stock within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

8.     Defendant Roadrunner is a Delaware corporation leading asset-light transportation and logistics service provider, offering a suite of global supply chain solutions. Roadrunner's principal executive offices located at 4900 S. Pennsylvania Ave., Cudahy, Wisconsin 53110. Roadrunner's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "RRTS."

9.     Defendant Mark A. DiBlasi ("DiBlasi") is the Company's chief executive officer ("CEO") and served as the Company's President from January 2006 until January 2016.

10.     Defendant Peter R. Armbruster ("Armbruster") is the Company's Chief Financial Officer ("CFO"), Treasurer and Secretary since December 2005

11.     Defendants in Paragraphs 9-10 are collectively referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

2

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal securities laws.

13.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Roadrunner's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

14.     As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

3

15. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Roadrunner's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

16. Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Roadrunner common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Roadrunner's business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Roadrunner common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A. Material Misstatements and Omissions during the Class Period

17. The Class Period starts on May 8, 2014, when the Company filed a Form 10-Q for the quarter ended March 31, 2014 ("Q1 2014 10-Q") with the SEC, which provided the Company's first quarter 2014 financial results and positions and stated that the Company's internal controls over financial reporting was effective as of March 31, 2014. The Q1 2014 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the

4

accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

18.     On August 7, 2014, the Company filed a Form 10-Q for the quarter ended June 30, 2014 ("Q2 2014 10-Q") with the SEC, which provided the Company's second quarter 2014 financial results and stated that the Company's internal controls over financial reporting was effective as of June 30, 2014. The Q2 2014 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

19.     On November 6, 2014, the Company filed a Form 10-Q for the quarter ended September 30, 2014 ("Q3 2014 10-Q") with the SEC, which provided the Company's third quarter 2014 financial results and stated that the Company's internal controls over financial reporting was effective as of September 30, 2014. The Q3 2014 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

20.     On March 2, 2015, the Company filed a Form 10-K for the year ended December 31, 2014 ("2014 10-K") with the SEC, which provided the Company's fourth quarter 2014 and full year 2014 financial results. The 2014 10-K also stated that the Company's internal controls over financial reporting was effective as of December 31, 2014. The 2014 10-K was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

21.     On May 7, 2015, the Company filed a Form 10-Q for the quarter ended March 31, 2015 ("Q1 2015 10-Q") with the SEC, which provided the Company's first quarter 2015 financial

results and positions and stated that the Company's internal controls over financial reporting was effective as of March 31, 2015. The Q1 2015 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

22. On August 3, 2015, the Company filed a Form 10-Q for the quarter ended June 30, 2015 ("Q2 2015 10-Q") with the SEC, which provided the Company's second quarter 2015 financial results and positions and stated that the Company's internal controls over financial reporting was effective as of June 30, 2015. The Q2 2015 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

23. On November 9, 2015, the Company filed a Form 10-Q for the quarter ended September 30, 2015 ("Q3 2015 10-Q") with the SEC, which provided the Company's third quarter 2015 financial results and stated that the Company's internal controls over financial reporting was effective as of September 30, 2015. The Q3 2015 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

24. On March 1, 2016, the Company filed a Form 10-K for the year ended December 31, 2015 ("2015 10-K") with the SEC, which provided the Company's fourth quarter 2015 and full year 2015 financial results. The 2015 10-K stated that the Company's internal controls over financial reporting was effective as of December 31, 2015. The 2015 10-K was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

25.    On May 10, 2016, the Company filed a Form 10-Q for the quarter ended March 31, 2016 ("Q1 2016 10-Q") with the SEC, which provided the Company's first quarter 2016 financial results and stated that the Company's internal control over financial reporting was effective as of March 31, 2016. The Q1 2016 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

26.    On August 8, 2016, the Company filed a Form 10-Q for the quarter ended June 30, 2016 ("Q2 2016 10-Q") with the SEC, which provided the Company's second quarter 2016 financial results and positions and stated that the Company's internal controls over financial reporting was effective as of June 30, 2016. The Q2 2016 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

27.    The statements in paragraphs 17-26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked effective internal control over financial reporting; (2) the Company's financial statements dating back to the beginning of 2014 overstated the estimated results of operations; (3) the Company's financial statements contained errors relating to unrecorded expenses from unreconciled balance sheet accounts including cash, driver and other receivables, and linehaul and other driver payables; (4) the Company's financial statements dating back to the beginning of 2014 were not reliable; and (5) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

7

### B.  The Truth Begins to Emerge

28.  On November 10, 2016, Roadrunner filed a Form 12b-25 notification of late filing with the SEC. The Form 12b-25 stated in pertinent part:

**PART III**
**NARRATIVE**

State below in reasonable detail why Forms 10-K, 20-F, 11-K, 10-Q, 10-D, N-SAR, N-CSR, or the transition report or portion thereof, could not be filed within the prescribed time period.

***Roadrunner Transportation Systems, Inc. (the "Company") has determined that it is unable to file its Quarterly Report on Form 10-Q for the fiscal quarter ended September 30, 2016 (the "Q3 2016 Form 10-Q")*** within the prescribed time period without unreasonable effort or expense for the reasons described below.

On November 4, 2016, during the preparation and review of the Company's quarterly compliance certificate required under its credit agreement, ***the Company identified a mistake in the calculation of its cash flow leverage ratio for the four quarters ended September 30, 2016***. Based on the corrected calculation, upon the delivery of the quarterly compliance certificate (required to be delivered by November 14, 2016), the Company would not be in compliance with its cash flow leverage ratio financial covenant for the four quarters ended September 30, 2016 absent a waiver of such anticipated non-compliance by the required lenders under the credit agreement. Since discovering the mistake, the Company has been in ongoing discussions with U.S. Bank National Association ("U.S. Bank") and the other lenders under its credit agreement with respect to a waiver of the Company's anticipated non-compliance with, and any actual or potential event of default resulting from such anticipated non-compliance with, the cash flow leverage ratio financial covenant for the four quarters ended September 30, 2016. As a result of those ongoing discussions and other related matters that have required the attention of senior management and other key personnel, the Company could not, without unreasonable effort and expense, complete its financial statements for the three and nine months ended September 30, 2016 and related disclosures and, consequently, could not file its Q3 2016 Form 10-Q within the prescribed time period. The Company currently intends to file the Q3 2016 Form 10-Q within 5 calendar days of its prescribed due date.

As mentioned above, the Company is currently engaged in discussions with U.S. Bank and the other lenders under its credit agreement with respect to a waiver of the Company's anticipated non-compliance with, and any actual or potential event of default resulting from such anticipated non-compliance with, the cash flow leverage ratio financial covenant for the four quarters ended September 30, 2016. Although the Company can provide no assurance, it expects to obtain such waiver

8

from U.S. Bank and the required lenders within the permitted extension period. However, the failure to obtain such waiver could have a material adverse effect on the Company's liquidity and financial condition.

Emphasis added.

## C. Additional Misstatements

29.     On November 14, 2016, the Company filed a Form 10-Q for the quarter ended September 30, 2016 ("Q3 2016 10-Q") with the SEC, which provided the Company's third quarter 2016 financial results and stated that the Company's internal control over financial reporting was effective as of September 30, 2016. The Q3 2016 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

30.     Throughout the Class Period, Roadrunner repeatedly issued press releases, investor presentations and other communications describing Roadrunner's financial statements for shareholders to rely upon.

31.     The statements in paragraphs 29-30 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked effective internal control over financial reporting; (2) the Company's financial statements dating back to the beginning of 2014 overstated the estimated results of operations; (3) the Company's financial statements contained errors relating to unrecorded expenses from unreconciled balance sheet accounts including cash, driver and other receivables, and linehaul and other driver payables; (4) the Company's financial statements dating

9

back to the beginning of 2014 were not reliable; and (5) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

**D.  The Truth Emerges**

32.     On January 30, 2017, after the market closed, Roadrunner issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing restatement of prior period financial statements ("January 2017 Press Release"). The January 2017 Press Release stated in pertinent part in pertinent part:

FOR IMMEDIATE RELEASE

**ROADRUNNER TRANSPORTATION SYSTEMS ANNOUNCES RESTATEMENT OF PRIOR PERIOD FINANCIAL STATEMENTS**

CUDAHY, WI - January 30, 2017 - Roadrunner Transportation Systems, Inc. ("Roadrunner") (NYSE: RRTS), a leading asset-light transportation and logistics service provider, announced today that on January 27, 2017 its Audit Committee, after considering the recommendation of management, concluded that, as a result of the information obtained to date in connection with an ongoing investigation described below, *the following financial statements and associated reports of Roadrunner's independent registered public accounting firm, Deloitte & Touche LLP, previously filed with the Securities and Exchange Commission ("SEC") should no longer be relied upon:*

- *the audited consolidated financial statements and unaudited quarterly information included in Roadrunner's Annual Report on Form 10-K for the year ended December 31, 2014;*

- *the unaudited condensed consolidated financial statements included in Roadrunner's Quarterly Reports on Form 10-Q for the quarters ended March 31, 2014, June 30, 2014, and September 30, 2014;*

- *the audited consolidated financial statements and unaudited quarterly information included in Roadrunner's Annual Report on Form 10-K for the year ended December 31, 2015;*

- *the unaudited condensed consolidated financial statements included in Roadrunner's Quarterly Reports on Form 10-Q for the quarters ended March 31, 2015, June 30, 2015, and September 30, 2015; and*

10

- *the unaudited condensed consolidated financial statements included in Roadrunner's Quarterly Reports on Form 10-Q for the quarters ended March 31, 2016, June 30, 2016 and September 30, 2016.*

*Similarly, related press releases, investor presentations or other communications describing Roadrunner's financial statements for these periods should no longer be relied upon.*

In November 2016, Roadrunner was made aware of various potential accounting discrepancies at its Morgan Southern and Bruenger operating subsidiaries. In response, Roadrunner's Board of Directors immediately commenced an investigation of the discrepancies with the assistance of Greenberg Traurig, LLP, as outside counsel, and RubinBrown LLP, as forensic accountants. The investigation into these discrepancies is still ongoing; however, based on the investigation to date, Roadrunner has identified various accounting errors that it currently estimates will require prior period adjustments to Roadrunner's results of operations of between $20 million and $25 million.

These errors principally relate to unrecorded expenses from unreconciled balance sheet accounts including cash, driver and other receivables, and linehaul and other driver payables. As the investigation is ongoing, the estimated amount is preliminary and could change materially. The investigation to date has disclosed that the accounting discrepancies may also affect periods prior to the periods set forth above. Roadrunner has not yet completed its analysis, however, to determine which prior periods may be affected. In addition, Roadrunner has begun to undertake a significant effort to determine if similar discrepancies and internal control deficiencies impacted other operating entities that were not part of the investigation. Therefore, there may be additional accounting adjustments as a result of these efforts and such adjustments may be material.

In addition, in conjunction with the investigation, Roadrunner is reassessing its internal controls over financial reporting and its compliance programs. The result of this reassessment could lead Roadrunner to conclude that there were deficiencies in Roadrunner's internal controls over financial reporting that constitute material weaknesses and would therefore effect the conclusions regarding effectiveness previously expressed in Item 9A, Controls and Procedures, of Roadrunner's Annual Report on Form 10-K for the year ended December 31, 2015. Accordingly, management's report on internal controls over financial reporting as of December 31, 2015 and the associated report of Deloitte & Touche

LLP should no longer be relied upon. Roadrunner is committed to maintaining an effective control environment and making changes needed to enhance effectiveness.

Roadrunner intends to amend its previously filed Annual Report on Form 10-K for the year ended December 31, 2015 and its Quarterly Reports on Form 10-Q for the

quarters ended March 31, 2016, June 30, 2016 and September 30, 2016 as soon as practicable, but it is not able to provide an estimated date for filings at this time.

"We want our stockholders to know that providing confidence and transparency in our financial statements is of paramount importance, and we are doing everything possible to ensure that these errors do not occur in the future," said Mark DiBlasi, Chief Executive Officer of Roadrunner.

Emphasis added.

33. On release of the news, the Company's share price fell from a close on January 30, 2017 of $11.54 per share of Roadrunner common stock trade around $7.74 per share during intra-day trading on January 31, 2017, a drop of approximately 33%.

**E. Loss Causation and Economic Loss**

34. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Roadrunner's misconduct and its lack of operational and financial controls was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Roadrunner's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

12

35. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Roadrunner's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Roadrunner's common stock to be artificially inflated. Plaintiff and other Class members purchased Roadrunner's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

F. **Scienter Allegations in Support of Exchange Act Violations**

36. Collectively, the following factual allegations strongly support an inference of scienter on the part of Defendants. Further, Defendants' actions, intentions, and deliberately reckless conduct are imputed to the Company as a matter of law. Because of their key roles in the Company, the Individual Defendants caused Roadrunner to act in the manner it did and perpetuate the material misrepresentations and omissions it made throughout the Class Period. Defendants acted with the requisite intent to establish liability under the Exchange Act. Their conduct with respect to Roadrunner's statements on the European Phase III study was intentionally misleading and/or reckless with regard to the risk of investors being misled.

37. For the reasons stated above, the factual allegations strongly support an inference of scienter on the part of Defendants.

G. **Presumption of Reliance; Fraud-on-the-Market**

38. At all relevant times, the market for Roadrunner securities was an efficient market for the following reasons, among others:

13

(a) Roadrunner securities met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;

(b) During the Class Period, Roadrunner securities were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Roadrunner filed with the SEC periodic public reports during the Class Period;

(d) Roadrunner regularly communicated with public investors via established market communication mechanisms;

(e) Roadrunner was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Roadrunner was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

39. As a result of the foregoing, the market for Roadrunner securities promptly digested current information regarding Roadrunner from all publicly available sources and reflected such information in Roadrunner's stock price. Under these circumstances, all purchasers of Roadrunner common stock during the Class Period suffered similar injury through their purchase of Roadrunner's common stock at artificially inflated prices, and a presumption of reliance applies.

40. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable

investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's true net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Roadrunner.

**H. No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine**

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

42.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

43.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Roadrunner who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff bring this action on behalf of all individuals and entities who purchased or otherwise acquired Roadrunner common stock on the public market during the Class Period, and

were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

45.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Roadrunner securities were actively traded on the New York Stock Exchange. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Roadrunner or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of November 11, 2016, Roadrunner had 38,340,326 outstanding shares of common stock. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

47.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff have no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b)     whether the defendants acted knowingly or with deliberate recklessness in

16

issuing false and misleading financial statements;

(c)     whether the price of Roadrunner securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Roadrunner securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

52.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain

17

artificially high market prices for Roadrunner common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Roadrunner as specified herein.

54.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Roadrunner's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Roadrunner and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Roadrunner common stock during the Class Period.

55.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant

18

enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

56.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Roadrunner's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Roadrunner's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Roadrunner's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was

19

known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Roadrunner's common stock during the Class Period at artificially high prices and were or will be damaged thereby.

58.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Roadrunner's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Roadrunner common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

59.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

61.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.     DiBlasi and Armbruster acted as controlling persons of Roadrunner within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, DiBlasi and Armbruster had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. DiBlasi and Armbruster were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

64.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Roadrunner, DiBlasi and Armbruster each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

66.     By virtue of their positions as controlling persons, DiBlasi and Armbruster are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

21

67. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: January 31, 2017                 WAGNER LAW GROUP, S.C.

                                        /s/K. Scott Wagner
                                        K. SCOTT WAGNER (SBN 1004668)
                                        839 North Jefferson Street, Suite 400
                                        Milwaukee, WI 53202
                                        Telephone: 414/278-7000
                                        414/278-7590 (fax)
                                        ksw@wagner-lawgroup.com

22

-and-

LEVI & KORSINSKY LLP
Nicholas I. Porritt
Alexander A. Krot III
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121

(*Pro hac vices* forthcoming)

*Attorneys for Plaintiff*