UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

IN RE ROADRUNNER TRANSPORTATION       Case No.: 17-cv-144-PP
SYSTEMS, INC. SECURITIES LITIGATION

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD
PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     DESCRIPTION OF THE LITIGATION......................................................................... 2

III.    PROPOSED SCHEDULE OF EVENTS......................................................................... 6

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .......... 7

      A.      The Proposed Settlement Meets the Standard for Preliminary Approval .......................... 7

      B.      The Settlement is the Result of a Thorough, Rigorous and Arm-Length Process Without
               Collusion ....................................................................................................................... 12

      C.      The Proposed Class Meets the Prerequisites for Class Certification Under Rule 23........ 13

            (1) Rule 23(a)(1) – Numerosity ....................................................................................... 14

            (2) Rule 23(a)(2) – Commonality .................................................................................... 15

            (3) Rule 23(a)(3) – Typicality......................................................................................... 15

            (4) Rule 23(a)(4) – Adequacy of Representation............................................................. 16

            (5) The Class May Be Properly Certified Under Rule 23(b)(3)....................................... 16

V.      THE PROPOSED NOTICE PROGRAM IS ADEQUATE ............................................ 17

VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.................................. 19

VII.    CONCLUSION............................................................................................................. 20

**Cases**                                                                                                          Page(s)

*Abrams v. Van Kampen Funds, Inc.*,
   No. 01 C 7538, 2002 U.S. Dist. LEXIS 16022 (N.D. Ill. Aug. 26, 2002) ............................ 15

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 09 C 2026, 2011 U.S. Dist. LEXIS 84219 (N.D. Ill. July 26, 2011) ................................ 9

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................ 13, 14, 17

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ................................................................................................. 8

*In re Bank One Secs. Litig./First Chi. S'Holder Claims*,
   No. 00 CV 0767, 2002 U.S. Dist. LEXIS 8709 (N.D. Ill. May 9, 2002) .............................. 14

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982) ............................................................................................. 7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d (9th Cir. 2004) ................................................................................................. 10-11

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .............................................................................................. 7

*Downes v. Wis. Energy Corp. Ret. Account Plan*,
   Case No. 09-C-0637, 2012 U.S. Dist. LEXIS 55612 (E.D. Wis. April 20 2012) ................. 10

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
   137 F.R.D. 240 (S.D. Ohio 1991) ........................................................................................ 7

*Gerlach v. W. Revenue Generation Servs., L.L.C., Case No. 1-18:cv-00170*,
   2019 U.S. Dist. LEXIS 977 (E.D. Wis. Jan. 3, 2019) ......................................................... 10

*Glass v. UBS Fin. Servs., Inc.*,
   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ..................................... 13

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhousecoopers*,
   212 F.R.D. 400 (E.D. Wis. 2002) ........................................................................................ 12

*Hale v. State Farm Mut. Auto Ins. Co.*,
   No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (2018) ................................................ 12

*Henry v. Sears Roebuck & Co.* ,
   No. 98-CV-4110, 1999 WL 33496080 (N.D. Ill. July 23, 1999) ........................................... 8

*Hispanics United of Du Page City v. Vill. of Addison*,
988 F. Supp. 1130 (N.D. Ill. 1997) ...................................................................... 8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................... 11

*In re Flag Telecom Holdings*,
No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ... 20

*In re Groupon, Inc. Secs. Litig.*,
No. 12 CV 2450, 2014 U.S. Dist. LEXIS 137382 (N.D. Ill. Sept. 23, 2014) .................. 15, 17

*In re Hartmarx Sec. Litig.*,
No. 01 C 7832, 2002 WL 31103491 (N.D. Ill. Sept. 19, 2002) ............................................ 15

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 11

*In re Indep. Energy Holdings Pub. Ltd. Co. Sec. Litig.*,
No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 26, 2003) ............................ 13

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
No. 94-civ-3996 (RWS), 1997 WL 805062 (S.D.N.Y. Dec. 31, 1997) ................................. 9

*In re NeoPharm, Inc. Sec. Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004) ......................................................................... 14

*In re PaineWebber Pshps. Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................... 20

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ........................... 12-13

*In re Sys. Software Assocs., Inc. Sec. Litig.*,
No. 97 C 177, 2000 WL 1810085 (N.D. Ill. Dec. 8, 2000) ................................. 14, 15, 16, 17

*In re Telectronics Pacing Sys. Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................. 8

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ........................................................................ 7, 9, 12

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ............................................................................. 15

*King v. Kan. City S. Indus., Inc.*,
519 F.2d 20 (7th Cir. 1975) ............................................................................... 14

*Officers for Justice v. Civil Serv. Com.*,
688 F.2d 615 (9th Cir. 1982) .............................................................................. 7

*Pesek v. Donahue*,
No. 04 C 4525, 2006 WL 1049969 (N.D. Ill. Feb. 9, 2006) ......................................... 7

*Phillips Petrol. Co. v. Shutts*,
472 U.S. 797 (1985) ...................................................................................... 17

*Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*,
   65 F. 3d 562 (7th Cir. 1995) ...................................................................7

*Pilkington v. Cardinal Health, Inc.* (*In re Syncor ERISA Litig.*),
   516 F.3d 1095 (9th Cir. 2008) ............................................................. 7

*Retsky Family Ltd. P'ship v. Price Waterhouse L.L.P.*,
   No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001) .......................... 19-20

*Rittmaster v. Jacobson* (*In re PaineWebber Ltd. Pshps. Litig.*),
   117 F.3d 721 (2d Cir. 1997) ................................................................ 20

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ......................................................... 15, 16

*Roth v. Aon Corp.*,
   238 F.R.D. 603 (N.D. Ill. 2006) ............................................................ 14

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ............................................................... 16

*Silverman v. Motorola, Inc.*,
   259 F.R.D. 163 (N.D. Ill. 2009) ........................................................... 16

*Tatz v. Nanophase Techs. Corp.*,
   No. 01 C 8440, 2003 WL 21372471 (N.D. Ill. June 12, 2003) ....................................... 14, 15

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................... 7

**Statutes**

15 U.S.C. § 10(b) .......................................................................... 15

15 U.S.C. § 13.14 ........................................................................ 8-9

15 U.S.C. § 20(a) (2012) ............................................................... 3, 15

15 U.S.C. § 21D(a)(3)(B) (2012) .......................................................... 3

15 U.S.C. § 23.162(3) ..................................................................... 9

15 U.S.C. § 77z-1(a)(7) (2012) .......................................................... 18

15 U.S.C. § 78u-4(a)(7) (2012) ........................................................... 2

15 U.S.C. §§ 10(b), 20(a) (2012) ......................................................... 3

**Rules**

Fed. R. Civ. P. 23 ................................................................... 2, 13, 14

Fed. R. Civ. P. 23(a)(1) ................................................................. 14

Fed. R. Civ. P. 23(a)(4) ................................................................. 16

Fed. R. Civ. P. 23(e) ................................................................................................ 7, 9

Fed. R. Civ. P. 23(e)(1) ................................................................................................ 17

Fed. R. Civ. P. 23(e)(1)(A) ........................................................................................... 1

Fed. R. Civ. P. 23(e)(1)(C) ........................................................................................... 2

# I.    INTRODUCTION

Lead Plaintiff Public Employees' Retirement System of Mississippi ("Lead Plaintiff" or "MPERS") respectfully submits this memorandum in support of preliminary approval of the settlement (the "Settlement") on the terms set forth in the parties' Stipulation and Agreement of Settlement dated as of March 29, 2019 (the "Settlement Agreement"), filed contemporaneously herewith.[1]  Following two mediation sessions before retired United States District Court Judge Layn R. Phillips ("Judge Phillips") the parties have reached an agreement to resolve this litigation and all claims.  To that end, the proposed Settlement provides for the payment of $20,000,000 for the benefit of the Settlement Class; and the adoption of corporate therapeutics.[2]

Approval of a class action settlement entails a multi-step process outlined in Rule 23(e) of the Federal Rules of Civil Procedure.  First, and in accordance with Rule 23(e), the Court makes a preliminary determination of whether this Settlement appears to fall within the range of possible approval.  *See* Fed. R. Civ. P. 23(e)(1)(A).  Hence, the burden is slight during this initial stage, for the purpose of preliminary approval is solely to identify whether the Settlement is so invalid on its face that it would make "notice to the class, with its attendant expenses, and a hearing … futile gestures."  *Newberg on Class Actions* § 11:25 (4th ed. 2002).  Second, assuming the Court determines that the Settlement meets the minimal requirements for preliminary approval, it should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. 23(e)(1)(B).  Third, after the Settlement Class is notified of the preliminary

---

[1]     All capitalized terms that are not defined herein have the same meanings as set forth in the Settlement Agreement.

[2]     "Settlement Class" means, for purposes of the proposed Settlement only, a class compromising all purchasers of the publicly traded common stock of Roadrunner between March 14, 2013 and January 30, 2018, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants, the officers, directors of the Company, the officers, directors and partners (general or limited) of HCI Equity Partners, LP and/or HCI Equity Management, LLC, members of the immediate family of each of the Defendants and other related non-parties, any person, firm trust, corporation, officer, director or other individual or entity in which any Defendant or other related non-party has controlling interest or which is related to or affiliated with any of the Defendants or other related non-parties, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

settlement, the approval process requires the Court to hold a formal fairness hearing, where Settlement Class Members will have the opportunity to object to any aspect of the Settlement. Fed. R. Civ. P. 23(e)(1)(C).

The Settlement is the result of informed and extensive arms-length negotiations between and among highly experienced counsel, facilitated by a respected mediator. The proposed Settlement is clearly within the "range" of reasonableness. The accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), attached as Exhibit A hereto (and to the Stipulation of Settlement) will: (1) preliminarily approve the terms of the Settlement as set forth in the Settlement Agreement; (2) certify the Settlement Class for settlement purposes; (3) approve the form and method for providing notice of the Settlement to the Settlement Class; and (4) schedule a settlement hearing (the "Settlement Hearing") at which time the Court will consider the request for final approval of: (a) the Settlement set forth in the Settlement Agreement, (b) the Plan of Allocation of settlement proceeds among Class Members ("Plan of Allocation"), and (c) Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses.

Hence, Lead Plaintiff respectfully requests that this Court enter the Notice Order; find that the procedures established for publication, mailing and distribution of the Notices substantially in the manner and form set forth in the Notice Order constitute the best notice practicable under the circumstances and are in full compliance with the notice requirements of due process, Fed. R. Civ. P. 23 and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act; and set forth a schedule and procedure for dissemination or publication of notice, for requesting exclusion from the Settlement Class, for submitting papers in support of final approval of the Settlement, for objecting to the Settlement, and for the Final Approval Hearing.

## II.     DESCRIPTION OF THE LITIGATION

On and after January 31, 2017, the following putative securities class action complaints were filed in the United States District Court for the Eastern District of Wisconsin on behalf of all those

who purchased or otherwise acquired Roadrunner's publicly traded common stock on the open market during certain time periods:

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Goss v. Roadrunner, et al.* | 2:17-cv-0014-PP | January 31, 2017 |
| *Strougo v. Roadrunner, et al.* | 2:17-cv-00147-PP | February 1, 2017 |
| *Public Employees Retirement System of Mississippi v. Roadrunner, et al.* | 2:17-cv-00474-PP | March 31, 2017 |

These actions were consolidated for all purposes by an Order of the Court filed May 19, 2017 dkt 16. The consolidated actions are collectively referred to herein, as the "Action."

On May 19, 2017, the Court appointed the Public Employees Retirement System of Mississippi as Lead Plaintiff, pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, ("PSLRA"), and approved their selection of Barrack, Rodos & Bacine as Lead Counsel.

On March 12, 2018, Lead Plaintiff filed a Consolidated Amended Class Action Complaint for Violation of the Federal Securities Law (the "Complaint"), on behalf of all purchasers of Roadrunner's publicly traded common stock on the open market during the period March 14, 2013 through January 30, 2017, inclusive, (the "Class Period"). The Complaint alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder as to Roadrunner, DiBlasi, and Armbruster and violations of Section 20(a) as to Rued and the HCI defendants, ("HCI").

On May 7, 2018, counsel for Lead Plaintiff and Defendants, along with representatives of Defendants' insurance carriers, among others, participated in an arms-length all-day mediation in Newport Beach, California, before retired United States District Court Judge Layn R. Phillips ("Judge Phillips"), a private mediator engaged by the Settling Parties. In connection with the mediation process, the Settling Parties exchanged and submitted detailed pre-mediation statements to Judge Phillips. The statements summarized the Settling Parties' respective settlement positions

and included exhibits and documentation.  This initial all-day mediation session was not successful and the parties proceeded to vigorous and extensive motion practice.  During the interval of time between adjourning the May 2018 mediation and the commencement of motion practice, the Settling Parties continued to engage in settlement discussions.

On July 23, 2018, each of the Defendants moved to dismiss the Complaint, filing five separate such motions – one motion each for and on behalf of Roadrunner, DiBlasi, Armbruster, and Rued, and one joint motion on behalf of HCI.  After Defendants moved to dismiss the Action, the Setting Parties conducted telephonic settlement discussions.  On September 21, 2018, Lead Plaintiff, via duly appointed Lead Counsel, with contributions from other participating class counsel, filed one omnibus opposition to the three separate Motions to Dismiss filed by Roadrunner, DiBlasi, and Armbruster, and one omnibus opposition to the two separate Motions to Dismiss filed by HCI and Rued.

Beyond Lead Plaintiff's extensive investigation and research, both before and after Roadrunner's issuance of its January 31, 2018 Restatement of its financial results through the Class Period, the process toward a fair and reasonable settlement of the action was further informed by the extensive briefing on, and in opposition to, Defendants' five separate Motions to Dismiss, and further extensive analysis of relevant jurisprudence.

After the Settling Parties' opening and opposition briefing vigorously presenting their legal positions, and before Defendants' reply briefing deadline, the Settling Parties agreed to a second mediation with Judge Phillips, which he conducted on October 22, 2018.  While the session with Judge Phillips made progress, it concluded without a resolution of the Action, and was followed by additional arms-length settlement communications directly between and among the Settling Parties.

Thereafter, November 19, 2018, after further settlement communications Lead Plaintiff and the Defendants reached an agreement in principle to settle this Action and executed a "Confidential Settlement Term Sheet and Memorandum of Understanding," further settlement discussions continued, culminating in the Parties entering into a more fulsome understanding and

memorialization of all terms of agreement as embodied in the Settlement Agreement dated March 29, 2019.

Lead Plaintiff believes that the claims asserted in the Complaint have merit. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the Defendants through trial and appeal. They have taken into account the uncertain outcome and risk of any litigation, especially in complex litigation such as this Action, as well as the difficulties and delays inherent in such litigation. They are mindful of the inherent problems of proof under, and possible defenses to, the securities law violations asserted in the Action. They have been mindful of the existence of a criminal indictment brought by the United States Attorney's Office for the Eastern District of Wisconsin against two former managerial-level employees of Roadrunner who did not issue the alleged false statements in the Action and are not defendants in this Action, but whose defense has been wasting insurance coverage and corporate assets, and the risks involved in recovering on any damages award or judgment in this Action. Lead Plaintiff and Lead Counsel believe that the Settlement, as set forth below, confers substantial benefits upon the Class. And they believe that the Settlement and resolution of the action on the terms agreed upon is in the best interests of the Settlement Class, especially in light of and after taking into account the financial condition and assets of Roadrunner.

The Defendants have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiff in the Action. The Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged in the Complaint, or that could have been alleged in the Action. The Defendants contend that they have meritorious defenses to all claims asserted or that could have been asserted based on the allegations of the Complaint. The Defendants deny and continue to deny, *inter alia,* the allegations that the Lead Plaintiff or the Class have suffered damage caused by them or that they knowingly issued or made any materially false statements or omissions when communicating with the market. Nonetheless, the Defendants have concluded that further litigation would be protracted and expensive, and that it is desirable that the Action be fully and finally settled

in the manner and upon the terms and conditions set forth below.  The Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this Action, and Roadrunner's financial condition and assets.

Lead Plaintiff and Lead Counsel believe that the Settlement is an excellent result, and is in all respects fair, adequate, and reasonable.  As such, this unopposed motion for preliminary approval should be granted in its entirety.[3]

## III.      PROPOSED SCHEDULE OF EVENTS

Lead Counsel and Lead Plaintiffs request permission to provide notice of the Settlement to Settlement Class Members at this time.  Lead Plaintiffs respectfully propose the following schedule for the various Settlement-related deadlines and events:

| EVENT | DEADLINE |
|---|---|
| Mailing individual Postcard Notices (the "Notice Date"): | *14 business days after entry of Preliminary Approval Order.* |
| Posting of the Notice and Claim Form, in downloadable form, on www.roadrunnersettlement.com | *Contemporaneous with the mailing of the Postcard Notice* |
| Publication of Summary Notice in *Investor's Business Daily* and transmission over *PR Newswire:* | *Within 18 business days of the Notice Date.* |
| Filing motions in support of the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsels' application for an award of attorneys' fees and expenses: | *No later than 35 days before the Settlement Hearing.* |
| Submission of requests for exclusion from the Settlement Class of objections to the Settlement, Plan of Allocation, or the request for attorneys' fees and expenses: | *Received no later than 21 days before the Settlement Hearing.* |

---

[3]      As set forth in the Stipulation, the approximate average recovery per allegedly damaged share of publicly traded common stock of Roadrunner would be $0.45 per allegedly damaged share before deduction of Court-approved fees, expenses, and administrative costs.  Had plaintiffs prevailed at trial on each of the claims set forth in the Consolidated Amended Complaint, Lead Counsel believe that the maximum per share damages would have ranged between $1.57 per share and $11.43 per share, depending on when the shares at issue were purchased and/or sold and reflecting the impact of certain corrective disclosures that occurred on October 26, 2015, January 30-31, 2017 and January 30, 2018.

| Filing reply papers in support of the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsels' application for an award of attorneys' fees and expenses: | *Filed no later than 7 days before the Settlement Hearing.* |
|---|---|
| Settlement Hearing: | At the Court's convenience, but ***approximately 90 days after entry of the Preliminary Approval Order.*** |
| Submission of Proofs of Claim: | ***Postmarked or received no later than 120 calendar days after the Notice Date.*** |

Counsel for defendant Roadrunner has indicated that, pursuant to the Class Action Fairness Act ("CAFA"), no later than 10 (ten) business days after the Settlement is preliminarily approved by the Court, the Roadrunner shall serve proper notice of the proposed Settlement upon the United States Attorney General and each State Attorney General. Simultaneously, Roadrunner shall provide a copy of such notice as well as proof of service of such notice to counsel for Lead Plaintiff.

## IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.     The Proposed Settlement Meets the Standard for Preliminary Approval

Fed. R. Civ. P. 23(e) requires court approval for any compromise of a class action. In determining whether to approve the Settlement, the Court should be guided by the "strong federal policy favoring the voluntary resolutions of disputes." *Pesek v. Donahue,* No. 04 C 4525, 2006 WL 1049969, at \*4 (N.D. Ill. Feb. 9, 2006) (citing *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562 (7th Cir. 1995)). Indeed, this policy has particular application to voluntary settlements of class action litigation. *See Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). *See also Enter. Energy Corp. v. Columbia Gas Transmissions Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) (the law general favors and encourages the settlement of class actions).[4] Accordingly, the Court should "consider the facts

---

[4]      This is a widely held view even beyond the Seventh Circuit. *See e.g.* the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle* 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same). *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). "[t]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits"). *Officers for Justice v.*

in the light most favorable to the settlement." *Henry v. Sears Roebuck & Co.*, No. 98-CV-4110, 1999 WL 33496080, at *8 (N.D. Ill. July 23, 1999).

As the Seventh Circuit has stated, settlement "minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. Of Sch. Dirs.*, 616 F.2d 305, 313 (7th Circuit 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Circuit 1998) (footnote omitted). The complexity and size of class actions further warrant this approach. "Settlement of the complex disputes often involved in the class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong*, 616 F.2d at 313.

There is also an initial presumption made in favor of the settlement's fairness, absent contrary evidence. *See Hispanics United of DuPage Cty v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997) (where settlement is the result of arm's length negotiations by experienced counsel who have engaged in adequate discovery necessary to represent the class effectively, a "strong initial presumption of fairness attaches to the proposed settlement"). "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise and settlement of claims brought on a class wide basis. Approval under Rule 23(e) involves a two-step process: first, a Preliminary Approval Order; and second, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a final approval order or judgment. *See* Manual for Complex Litigation Section 13.14 (4th ed. 2004) ("First, the judge

---

*Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"). *See also Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982) aff'd 737 F.2d 982 (11th Cir. 1984) (Settlements of class actions are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits.").

reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing").

Courts considering the preliminarily approving class action settlements have stated:

> Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within range of possible approval, preliminary approval should be granted.

*In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94-civ-3996 (RWS), 1997 WL 805062, at *8 (S.D.N.Y. Dec. 31, 1997) (citing Manual for Complex Litigation Section 30.41, at 237 (West 1995)). "At the preliminary approval stage, however, the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval' not to conduct a full-fledged inquiry into whether this settlement meets Rule 23(e)'s standards."[5] *Am. Int'l Grp., v. ACE INA Holdings, Inc.*, No. 07 C 2898, No. 09 C 2016, 2011 U.S. Dist. LEXIS 84219, at *32-*33 (N.D. Ill. July 26, 2011) (citation omitted). In short, an evaluation of the benefits of settlement must also be tempered by recognition that the "essence of settlement is compromise." *Isby*, 75 F.3d at 1200 (citation omitted).

Lead Plaintiff believes the Settlement merits final approval, but the Court need not make that determination now. The Court is being asked to permit notice of the terms of the Settlement to be sent to the Settlement Class and to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any expressed views by Settlement Class Members about the fairness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of fees and expenses. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.162[3] (3d ed. 2013).

A summary review of the required criteria demonstrates that the proposed settlement is clearly within the "range of possible approval." The Settlement provides an immediate and

---

[5] At the Settlement Hearing, the court will have before it more detailed papers submitted in support of final approval of the Settlement and only then will be asked to make the final determination as to whether a Settlement is indeed fair, reasonable and adequate under the circumstances. However, at this juncture, Lead Plaintiff only requests that the court grant preliminary approval of the Settlement.

significant cash benefit to the Class, providing the gross sum of $20,000,000 for distribution to eligible Settlement Class Members. This is unquestionably "within the range of possible approval" and represents approximately more than 86% of Roadrunner's market capitalization when the parties reached agreement on this principle term, (as of November 19, 2018), and more than 115% of the Company's market capital immediately prior to a February 2019 "rights offering." It is a particularly fair settlement in light of Roadrunner's financial condition that was so distressed that it was required to conduct a "rights offering" in order to raise $450 million to pay off debt and stave off ultimate bankruptcy. As of December 31, 2018, before the completion of the "rights offering" in February 2019, effectively resulting in the vast majority of Roadrunner's shares being owned by one single entity, the Company had only $11.2 million in cash and cash equivalents. Through the "rights offering," Roadrunner realized only approximately $30 million in net proceeds.

Given the complexity of the Action and the substantial risk and uncertainty of continued litigation, Lead Counsel believes the Settlement represents an excellent resolution of the Action and eliminates the risk that the class might not otherwise recover if this litigation were to continue. In addition, the Settlement is well within the range of reasonableness compared to other securities fraud settlements. As reported by NERA Economic Consulting, between 2013 and 2017, the *median* settlement in securities fraud class actions ranged from $6-$10 million. *See* NERA Economic Consulting, Recent Trends in Securities Class Action Litigation:2017 Full Year Review (January 29, 2018).

Second, the fairness and adequacy of the Settlement is underscored by taking into account the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *Downes v. Wis. Energy Corp. Ret. Account Plan*, Case No. 09-C-0637, 2012 U.S. Dist. LEXIS 55612 (E.D. Wis. April 20, 2012) (citing "the complexity and likely length of continued litigation" as a factor supporting settlement approval); *see also Gerlach v. W. Revenue Generation Servs., L.L.C.*, Case No. 1-18:cv-00170, 2019 U.S. Dist. LEXIS 977, *4 (E.D. Wis. Jan. 3, 2019) (same). *See also Churchill Vill., L.L.C. v. Gen.*

*Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing risk, expense, complexity and likely duration of further litigation, as facts supporting final approval of settlement). At this juncture, the $20,000,000 settlement results in an immediate and substantial tangible recovery, without the considerable risk, expense and delay of discovery, summary judgment motions, trial and post-trial litigation. The rights offering, initially scheduled to commence January 9, 2019, was completed in late February 2019, after being delayed as a result of the shut down of the federal government.

While Lead Plaintiff and Lead Counsel believe that is the allegations of the Complaint are meritorious, this case would have faced considerable obstacles over the course of the continuing Action. Specifically, Defendants have substantially challenged issues of scienter, loss causation and damages.[6] The individual defendants have maintained that they were unaware of any false accounting, were themselves victims of mistakes, concealments or other reporting failures by lower level managers and that reporting systems in acquired companies ultimately proved not to be integrated sufficiently to apprise them of any mistaken accounting of financial results and operations.

While Lead Plaintiff has vigorously disagreed with Defendants' positions, these complex scienter, loss causation and damages issues would, at the end of the day, hinge upon extensive expert discovery and testimony. The trial would entail a "battle of the experts" with "no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 236, 239 (3d Cir. 2001). Even were Lead Plaintiff to overcome all such challenges, including those presently pending before the Court in the Defendants' five Motions to Dismiss, including the motions of the alleged "control person" defendants, there would still would have been a complex trial and likely appeals. At the point of settlement, Lead Plaintiff was in an excellent position to evaluate the strengths and weaknesses of the allegations against the Defendants, and the substantial risks of continued litigation, because of, among other things, the considerable factual and legal research conducted

---

[6]     *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (recognizing "the issues of *scienter* and causation are complex and difficult to establish at trial" and therefore concluding "settlement is a prudent course").

in connection with the Motion to Dismiss briefing and the expensive preparatory work that was performed in connection with the process of mediations, along with input from forensic consultants with respect to accounting issues, loss causation, and damages.

Importantly, Lead Plaintiff, through its counsel, has carefully considered and evaluated, *inter alia*, the relevant factual and legal support for the claims asserted, the likelihood of prevailing on these claims, the risk, expense and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Lead Plaintiff did prevail at trial. Lead Counsel has concluded that the settlement is not only fair, reasonable and adequate, but represents a favorable resolution of this complex action. Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the Country, for many years. *See* www.barrack.com. The opinion of Lead Counsel that a settlement is in the best interest of the class supports its approval. In weighing approval of a settlement, the court is "entitled to give consideration to the opinion of competent counsel." *Isby,* 75 F.3d at 1200 (7th Cir. 1996). Here, Barrack, Rodos & Bacine has extensive experience and success in litigating complex securities class actions such as this, as recognized by several courts. *See, e.g. In re Apollo Group Inc. Securities Litigation,* Master File No. CV-04-2147 PHX-JAT (D. Az.) (where the court noted counsel's "extraordinary talent and preparation") and *In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288 (DLC) (S.D.N.Y.) (noting that "the quality of the representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation").

### B. The Settlement is the Result of a Thorough, Rigorous and Arm-Length Process Without Collusion

"A strong presumption of fairness attaches to a settlement agreement when it is the result of this type [arm's length] of negotiation." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (citation omitted). *See also Hale v. State Farm Mut. Auto Ins. Co.*, 2018 U.S. Dist. LEXIS 210368, *14 (S.D. Il. Dec. 13. 2018) (arm's length negotiation "strongly favors final approval"); *In re Portal Software, Inc. Sec.*

*Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007) ([t]here is an initial presumption that a proposed settlement is fair and reasonable when it is "the product of arm-length negotiations"). The settlement process coursed from approximately early May 2018 through November 19, 2018, with additional negotiations taking place as recently as March 2019. Before, during and following mediations that coursed over an extended period of time, the strength and weaknesses of Lead Plaintiff's and Defendants' respective claims and defenses were fully explored by the Settling Parties. The two mediations hosted by Judge Phillips focused on the many disputed issues of liability, scienter, loss causation, damages and "control person liability." With an informed understanding of these various issues, the Settling Parties agreed to the settlement at arm's length.

Judge Phillips played an active role in addressing the relevant issues with the Settling Parties and bringing about the Settlement. Indeed, "the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation," provides further proof that approval is appropriate. *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). *See also Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ("The settlement was negotiated and approved by experienced counsel on both sides of the litigation, with the assistance of a well-respected mediator with substantial experience … [and] this factor supports approval of the settlement."). Here, the fact that the Settlement was achieved with the assistance of a highly respected and experienced mediator, Judge Phillips, is significant and further supports preliminary approval.

## C. The Proposed Class Meets the Prerequisites for Class Certification Under Rule 23

One of the Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Fed. R. Civ. P. 23. *See Amchem Prods v. Windsor*, 521 U.S. 591 (1997). Rule 23(a) establishes four prerequisites to class

certification (i) "numerosity", (ii) "commonality", (iii) "typicality", and (iv) "adequacy" of representation.  *See id.* at 613.  In addition, the class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23.  The Seventh Circuit has acknowledged that Rule 23 must be liberally construed in this context: "its policy is to favor maintenance of class actions.  This policy operates just as surely in cases where securities fraud is charged.  It is especially strong in instances where denial of a class status would effectively terminate further litigation of the securities fraud claims."  *King v. Kan. City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975) (citations omitted); *see also Roth v. Aon Corp.*, 238 F.R.D. 603, 605 (N.D. Ill. 2006) (stating that "class certifications are the preferred method of dealing with securities fraud cases").  As further detailed below.  The proposed Settlement Class satisfies Rule 23 requirements.

### (1)  Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Here, the number and location of the putative settlement class members is easily in the hundreds, if not the thousands, especially given that there were approximately 35 million shares of Roadrunner common stock outstanding at the beginning of the class period.  It would be impractical to join so many shareholders as parties in one lawsuit.  *See Tatz v. Nanophase Techs. Corp.*, No. 01-8440, 2003, WL 21372471 at *6 (N.D. Ill. June 13, 2003) (certifying class where company's shares "were likely owned by hundreds of persons or entities"), *In re Bank One Secs. Litig./First Chi. S'holder Claims*, No. 00-CV-0767, 2002 US Dist. LEXIS 8709, at *10 (N.D. Ill. May 14, 2002) (finding numerosity in Section 11 class and noting that court's "have granted class certification to groups smaller than 30").  "In securities fraud suits involving nationally traded securities, numerosity may be assumed." *In re Sys. Software Assocs., Inc. Sec. Litig.*, No. 97 C 177, 2000 WL 1810085, at *1 (N.D. Ill. Dec. 8, 2000).  *See also In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (certifying class where the Company had more than 16 million shares being traded on NASDAQ such that it could be "reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class."  Thus, numerosity has been met.

### (2)     Rule 23(a)(2) – Commonality

Rule 23(a)(2) is satisfied when "[a] common nucleus of operative fact" unites a class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Complete identity of a named plaintiff's claims to those of the class is not required. *See In re Hartmarx Sec. Litig.* No. 01 C 7832, 2002 WL 31103491, at *4 (N.D. Ill. Sept. 19, 2002). "Rule 23(a)(2) commonality is not a demanding requirement; one issue of fact or law common to all class members will suffice." *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2002 U.S. Dist. LEXIS 16022, at *9 (N.D. Ill. Aug. 27, 2002) (citation omitted). Common questions of law or fact clearly predominate in this Action. The common question applicable to all settlement class members is whether the defendants made misrepresentations or omitted information necessary to be disclosed, and whether the alleged misrepresentations or omissions were material. *See Tatz*, 2003 WL 21372471, at *6 (certifying a class where common questions included whether the federal securities laws were violated by the defendants' acts and omissions, and whether the defendants participated in and pursued the common course of conduct). Here, the common legal and factual questions more than satisfy "the low 'hurdle' of commonality." *In re Groupon, Inc. Secs. Litig.*, No. 12-CV-2450, 2014 U.S. Dist. LEXIS 137382, at *6 (N.D. Ill. Sept. 23, 2014) (citation omitted) (certifying class). Thus, commonality is satisfied.

### (3)     Rule 23(a)(3) – Typicality

The typicality requirement of 23(a)(3) is satisfied because Lead Plaintiff's claims arise from the same "event or practice or course of conduct that gives rise to the claims of other class members and … are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (citation omitted). Lead Plaintiff and the other class members were all provided with the same allegedly false and misleading statements respecting Roadrunner's financial results and performance, and would use the same evidence to prove their case. Lead Plaintiff's claims, like the Settlement Class's claims, are premised on the same legal theory – Defendants' violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, and Section 20(a) of the Securities Exchange Act of 1934. Accordingly, typicality is satisfied. *See*

*Software Assocs.*, 2000 WL 1810085, at *2 (granting class certification where plaintiffs' claims cover the same "course of action that g[ave] rise to the claims of other class members and … [we]re based on the same legal theory").

### (4)      Rule 23(a)(4) – Adequacy of Representation

The "adequacy" requirement of Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *accord Rosario,* 963 F.2d at 1018. This requirement is satisfied where lead plaintiff establishes that: "(1) their claims are not antagonistic to or in conflict with those of the proposed class; (2) they have sufficient interest in the outcome of the case; and (3) experienced, competent counsel represents them." *See Silverman v. Motorola*, *Inc.*, 259 F.R.D. 163, 173 (N.D. Ill. 2009). Lead Plaintiff satisfies all three prongs. First, Lead Plaintiff has no interest antagonistic to the interest of the class as Lead Plaintiff is a member of the Class and asserts the same type of alleged economic damages as the other Class Members. Second, Lead Plaintiff has a sufficient interest in the outcome of the case having purchased more than 217,000 shares of Roadrunner common stock in the open market during the Class Period and suffering substantial losses. Third, Lead Plaintiff retained attorneys highly qualified, experienced, and able to successfully conduct this litigation. Lead Counsel are at the forefront nationally in litigating complex class actions. Thus, Lead Plaintiff is an adequate class representative.

### (5)      The Class May Be Properly Certified Under Rule 23(b)(3)

In addition to satisfying all the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b). Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy. Both requirements are satisfied here.

The predominance inquiry focuses on the existence of common issues. The 7th Circuit has recognized that in securities class actions "[b]ecause each investor's loss usually can be established mechanically, common questions predominate and class certification is routine[.]" *Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010). The Supreme Court of the United States

is in accord.  *See Amchem*, 521 U.S. at 625, ("[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws").  In this case, as in virtually all securities class actions, "[w]hether defendants" statements are false … [w]hether the false-hoods effected the stock's price … [and] [w]hether the magnitude of any effect shows that the false information was "material" are common questions which predominate over any individual issues.  *Schleicher, id.* at 681.  *See also Software Assoc.,* 2000 WL 1810085, at *4 ("the principal issues of law and fact relate to defendants' alleged misrepresentations.  These issues are common to the members of the class and predominate over any questions affecting only individual members").

Further, resolution of this case through a class action is far superior to litigating individual claims, for the expense for a single investor in pursuing a separate action could exceed the individual's loss.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action device permits pooling of claims where it would be uneconomical to litigate individually).  *See also Groupon*, 2014 US Dist. LEXIS 137382, at *9.[7]

## V.   THE PROPOSED NOTICE PROGRAM IS ADEQUATE

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.*, the proposed settlement).  Here, the parties negotiated the form of the Postcard Notice to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from or through Roadrunner's transfer records.  Contemporaneous with the mailing of the Postcard Notice, the Claims Administrator will cause the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and Claim form to be posted, in downloadable form, on a website, www.roadrunnersettlement.com. The Claims Administrator will

---

[7]     As the Supreme Court has held in *Amchem*, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems," because claims obviously will not be litigated or tried.  *See Amchem*, 521 U.S. at 620.

also mail the Notice and Claim to potential members of the Settlement Class upon request. In addition, the Claims Administrator will send the Postcard Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the securities. The parties further propose to supplement the mailed Postcard Notice with a Summary Notice published in *Investor's Business Daily* and transmitted over a national newswire service. The Postcard Notice, Notice, and Summary Notice are attached to the Exhibit A – Proposed Order as Exhibits A-1, A-2, and A-4.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for attorneys' fees of 17% of the Settlement Amount and litigation expenses not to exceed $295,000, plus interest earned on both amounts, to be paid from the Settlement Fund, in addition to payment of notice and administrative costs and taxes. *See* Exhibit A-2 to the Settlement Agreement, at Question 17.

Furthermore, in securities class actions, the PSLRA requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share bases"; (2) "[i]f the parties do not agree on the average amount of damages per share that would  be recoverable if the plaintiff prevailed on each claim alleged under this subchapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make … an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §77z-1(a)(7). The Notice includes all of the information required by the PSLRA, as well as additional relevant information.

The proposed form of notice describes the Settlement and sets forth the Settlement Amount $20,000,000 and the approximate average distribution per damaged share if claims for 100% of such eligible shares are made ($0.45/share); states the parties' disagreement over damages and liability; sets out the attorney's fees and litigation expenses (in the aggregate) and the average net per share recovery after deductions ($0.37/share) that Lead Counsel intend to seek in connection with final settlement approval; and describes the Plan of Allocation. In addition, the Notice explains the nature, history and status of the Action; sets forth the definition of the Class; states the Class' claims and issues; discusses the rights of persons who fall within the definition of the Class; and summarizes the reasons for proposing the Settlement.

The Notice includes detailed information on the process and requirements for requesting exclusion from the Class. For Settlement Class Members who wish to participate in the Settlement, the Notice provides instructions on the timing and process for completing and submitting the Proof of Claim and Release form that accompanies the Notice. The Postcard Notice and the Summary Notice also inform Settlement Class Members that copies of the Notice and Proof of the Claim and Release form may be obtained by writing the Claims Administrator, or by accessing the documents on the case specific website (www.roadrunnersettlement.com). Finally, the Notice sets forth the date, time, and place of the Settlement Hearing, along with the procedures for commenting on the Settlement and includes the postal address for the Court, Lead Counsel, and counsel for Defendants.

The contents of the Postcard Notice, Notice, and Summary Notice satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA. Accordingly, in granting the preliminary approval of the proposed Settlement, Lead Plaintiff respectfully requests the Court also approve the parties' proposed form and method of giving notice to the Class.

## VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

"The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation." *Retsky Family Ltd. P'ship v. Price L.L.P., Waterhouse,* No. 97 C

7694, 2001 U.S. Dist. LEXIS 20397, at *9 (N.D. Ill. Dec. 6, 2001). An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel. *In re Flag Telecom. Holdings*, No. 02-cv-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *61 (S.D.N.Y. Nov. 5, 2010). *See also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126, 133 (S.D.N.Y. 1997). *Aff'd sub nom. In re Paine Webber Inc. Ltd. Partnerships Litig.*, 117 F. 3d 721 (2d Cir. 1997). The proposed Plan of Allocation, which is detailed in the proposed Notice Order, Exhibit A-1 hereto, provides formulas for calculation of the recognized claim of each Settlement Class Member, based on each such person's purchases and sales of Roadrunner's publicly traded common stock during the Settlement Class Period, taking into account the timing and impact of the alleged corrective disclosures, including their impact on liability and damages, the merits of the respective liability claims, and the recommendations of experienced and competent Lead Counsel with respect to an appropriate allocation. Lead Plaintiff will receive a distribution from the Net Settlement Fund based on the same formulas that apply to the recovery of all similarly situated shares purchased by members of the Settlement Class.

## VII. CONCLUSION

In conclusion, Lead Plaintiff requests that this Court preliminarily approve the proposed settlement and enter the Notice Order (which is attached hereto and to the Settlement Agreement as Exhibit A).

DATED: April 1, 2019    Respectfully submitted,

            /s/ Stephen R. Basser
            BARRACK, RODOS & BACINE
            STEPHEN R. BASSER (121590)
            sbasser@barrack.com
            SAMUEL M. WARD (216562)
            sward@barrack.com

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

JEFFREY A. BARRACK
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com


CROSS LAW FIRM, S.C.
Nola J. Hitchcock Cross
Mary C. Flanner
The Lawyers' Building
845 N. 11th Street
Milwaukee, WI 53233
Telephone: (414) 224-0000
Facsmile: (414) 273-7055
mflanner@crosslawfirm.com
njhcross@crosslawfirm.com



GADOW TYLER, PLLC
Blake Tyler, Esquire
Jason M. Kirschberg, Esquire
511 E. Pearl Street
Jackson, Mississippi 39201
Telephone: (601) 355-0654
Facsmile: (601) 510-9667
blake@gadowtyler.com
Jason@gadowtyler.com

*Counsel for Lead Plaintiff Public Employees
Retirement System of Mississippi and The Proposed
Class*