STEPHEN R. BASSER
SAMUEL M. WARD
**BARRACK, RODOS & BACINE**
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

JEFFREY A. BARRACK
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com

*Lead Counsel for Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*
*and the Proposed Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

IN RE ROADRUNNER TRANSPORTATION        Case No.: 17-cv-144-PP
SYSTEMS, INC. SECURITIES LITIGATION

## STIPULATION AND AGREEMENT OF SETTLEMENT

Subject to the approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Stipulation and Agreement of Settlement, (the "Settlement Agreement" or "Stipulation"), is between Public Employees Retirement System of Mississippi ("Lead Plaintiff") on behalf of itself and the Settlement Class, as defined herein, and defendant Roadrunner Transportation Systems, Inc., ("Roadrunner" or the "Company"), Mark A. DiBlasi, ("DiBlasi"), Peter Armbruster ("Armbruster"), Scott D. Rued ("Rued"), HCI Equity Partners, L.L.C. and HCI Equity Management, L.P. (the HCI entity defendants are collectively "HCI"), (collectively, Roadrunner, DiBlasi, Armbruster, Rued, and HCI are the "Defendants"), by and through their counsel of record.

Lead Plaintiff and Defendants (collectively the "Settling Parties"), intend for this Settlement Agreement to fully, finally and forever resolve, discharge, and settle all the released claims included and defined herein, and to dismiss this Action with prejudice, subject to the terms and conditions set forth below and without any admission or concession as to the merits of any claim asserted by Lead Plaintiff or defense asserted by Defendants.

**WHEREAS,**

A.     On and after January 31, 2017, the following putative securities class action complaints were filed in the United States District Court for the Eastern District of Wisconsin alleging a class comprised of all those who purchased or otherwise acquired Roadrunner's publicly traded common stock during certain time periods:

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Goss v. Roadrunner, et al.* | 2:17-CV-0014-PP | January 31, 2017 |
| *Strougo v. Roadrunner, et al.* | 2:17-cv-00147-PP | February 1, 2017 |
| *Public Employees Retirement System of Mississippi v. Roadrunner, et al.* | 2:17-cv-00474-PP | March 31, 2017 |

These actions were consolidated for all purposes by an Order of the Court filed May 19, 2017 into the above-captioned action entitled *In re Roadrunner Transportation Systems, Inc.,* No. 17-

1

cv-144-PP (E.D. Wis.).  The consolidated actions are collectively referred to herein, as the "Action."

B.      On May 19, 2017, the Court appointed the Public Employees Retirement System of Mississippi as Lead Plaintiff, pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, ("PSLRA"), and approved their selection of Barrack, Rodos & Bacine as Lead Counsel.

C.      On March 12, 2018, Lead Plaintiff filed a Consolidated Amended Class Action Complaint for Violation of the Federal Securities Law (the "Complaint"), alleging a class comprised of all purchasers of Roadrunner's publicly traded common stock on the open market during certain time periods.  The Complaint alleges violations of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder as to Roadrunner, DiBlasi and Armbruster, and violations of § 20(a) of the Exchange Act as to DiBlasi, Armbruster, Rued, and HCI.

D.      On May 7, 2018, counsel for Lead Plaintiff and Defendants, along with representatives of Defendants' insurance carriers, among others, participated in an all-day mediation in Newport Beach, California, before retired United States District Court Judge Layn R. Phillips ("Judge Phillips"), a private mediator engaged by the Settling Parties.  This initial all-day mediation session did not resolve the dispute.  Thereafter, the Settling Parties continued to engage in settlement discussions.

E.      On July 23, 2018, each of the Defendants moved to dismiss the Complaint, filing five separate such motions – one motion each for and on behalf of Roadrunner, DiBlasi, Armbruster, and Rued, and one joint motion on behalf of HCI.  After Defendants moved to dismiss the Action, the Settling Parties conducted telephonic settlement discussions.  On September 21, 2018, Lead Plaintiff, via duly appointed Lead Counsel, with contributions from other participating class counsel, responded to and opposed the five Motions to Dismiss with one omnibus opposition to the three separate Motions to Dismiss filed by Roadrunner, DiBlasi, and Armbruster, and one omnibus opposition to the two separate Motions to Dismiss filed by HCI and Rued.

F.     After the Settling Parties' opening and opposition briefing on the motions to dismiss and before Defendants' reply briefing deadline, Judge Phillips conducted a second mediation session on October 22, 2018.  The session also concluded without a resolution of the Action.

G.     On November 19, 2018, after further direct communications between the parties and involving Judge Phillips, Lead Plaintiff and Defendants reached an agreement in principle to settle this Action and executed a "Confidential Settlement Term Sheet and Memorandum of Understanding" pursuant to their agreement.

H.     Lead Plaintiff believes that the claims asserted in the Action have merit. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings that could be necessary to prosecute the Action against the Defendants through trial and appeal.  Lead Plaintiff and Lead Counsel have also taken into account the uncertain outcome and risk of any litigation, especially in complex litigation such as this Action, as well as the difficulties and delays inherent in such litigation.  Lead Plaintiff and Lead Counsel are also mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Action.  Lead Plaintiff and Lead Counsel have also been mindful of the risks involved in recovering on any damages or judgment in this Action. Lead Plaintiff and Lead Counsel believe that the Settlement, as set forth below, confers substantial benefits upon the Class.  Lead Plaintiff and Lead Counsel believe that the Settlement and amicable resolution of the action on the terms agreed upon is in the best interests of the Class, especially in light of and after taking into account the financial condition and assets of Roadrunner.

I.     Defendants have denied and continue to deny each and all the claims asserted by Lead Plaintiff in the Action.  Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged in the Complaint, or that could have been alleged in the Action.  Defendants believe they have meritorious defenses to all claims that were asserted or could have been asserted based on the allegations of the Complaint.  Moreover, Defendants believe the evidence

3

supports their positions and defenses. Defendants have also denied and continue to deny, *inter alia,* the allegations that the Lead Plaintiff or the Class have suffered damage caused by them, that they made any materially false statements or omissions when communicating with the market, that the price of Roadrunner common stock was artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, and that the Lead Plaintiff or the Class were harmed by the conduct alleged in the Complaint. Nonetheless, Defendants have concluded that further litigation would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth below. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this Action, and Roadrunner's financial condition and assets.

**NOW, THEREFORE**, without any admission or concession by Lead Plaintiff that the Action lacks merit, and without any admission or concession by Defendants of any liability or wrongdoing, or lack of merit in their defenses,

**IT IS HEREBY STIPULATED AND AGREED** by and among the Lead Plaintiff (for itself and every Settlement Class Member as defined herein) and Defendants, by and through their respective and duly authorized counsel or attorneys of record, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as follows:

### 1. DEFINITIONS

As used in the Stipulation the following terms have the meanings specified below:

1.1. "**Action**" means the above-captioned action titled *In re Roadrunner Transportation Systems, Inc. Securities Litigation*, Case No. 17-cv-144-PP (E.D. Wis.).

1.2. "**Alternative Judgment**" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Settlement Agreement and where none of the Settling Parties hereto elects to terminate this Settlement by reason of such variance.

1.3. "**Authorized Claimant**" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Settlement Agreement.

4

1.4.     "**Claimant**" means any Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.5.     "**Claims Administrator**" means the Heffler Claims Group.

1.6.     "**Class**" or "**Settlement Class**" means all Persons who purchased or otherwise acquired Roadrunner's publicly traded common stock on the open market between March 14, 2013 and January 30, 2018, inclusive.  Excluded from the Class are Defendants, any entity in which any Defendant has or had a controlling interest, Roadrunner's and/or HCI's current or former employees, directors, parents, subsidiaries, divisions, affiliates, officers, managers, general or limited partners, control persons or entities, the immediate family members of defendants DiBlasi, Armbruster, or Rued, any trust of which DiBlasi, Armbruster, or Rued is settlor or which is for the benefit of a member of their immediate family, and the legal representatives, heirs, successors, or assigns of any such excluded person or entity.  Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

1.7.     "**Class Counsel**" means Lead Counsel, Barrack, Rodos & Bacine and the law firms Cross Law Firm, S.C. and Gadow Tyler, P.C.

1.8.     "**Class Member**," "**Member of the Class**" or "**Settlement Class Member**" means a Person who falls within the definition of the Class as set forth in ¶1.6 above, who is not excluded by the definition.

1.9.     "**Class Period**" means the period from March 14, 2013 to and through January 30, 2018, inclusive.

1.10.     "**Company**" means Roadrunner Transportation Systems, Inc.

1.11.     "**Defendants**" means Roadrunner, DiBlasi, Armbruster, Rued, and HCI.

1.12.     "**Derivative Actions**" or "**Derivative Cases**" means the Federal Derivative Action and the State Derivative Action.

1.13.     "**Effective Date**" means the first date by which all the events and conditions specified in ¶7.1 of the Settlement Agreement have been met and have occurred.

5

1.14. **"Entity Defendants"** mean Roadrunner and HCI.

1.15. **"Escrow Account"** means the separate escrow account at Wells Fargo Bank, N.A., into which the Settlement Fund defined in ¶1.42 below shall be deposited pursuant to ¶3.1 of this Stipulation and Settlement Agreement for the benefit of the Settlement Class.

1.16. **"Escrow Agent"** means Wells Fargo Bank, N.A.

1.17. **"Federal Derivative Action"** means the action captioned as *In re Roadrunner Transportation Systems, Inc. Stockholders Derivative Litigation*, Case No. 17-cv-893-PP (Eastern District of Wisconsin, Milwaukee Division);

1.18. **"Federal Derivative Settlement"** refers to the settlement of the Federal Derivative Action.

1.19. **"Fee and Expense Application"** means the request for such amounts as the Court may award to Class Counsel to compensate them for their fees and pay them for their expenses in connection with the Action, which may include some or all of the following: (i) an award of attorneys' fees; (ii) payment of expenses incurred in connection with prosecuting the Action, including, without limitation, expenses attributable to experts and/or consultants retained by Lead Counsel; (iii) any award to Lead Plaintiff for reasonable costs and expenses pursuant to the PSLRA; and (iv) interest on such attorneys' fees and expenses at the same rate as earned by the Settlement Fund beginning the later of thirty (30) days after entry of the Final Approval Order in this Action or order granting final approval of the settlement of the Federal Derivative Action until the date paid from the Settlement Fund.

1.20. **"Final"** with respect to the Judgment approving the Settlement Agreement, the judgment approving the Federal Derivative Settlement (**"Federal Derivative Judgment"**), or the judgment dismissing the State Derivative Action or approving a settlement of the State Derivative Action ("**State Derivative Judgment**") means when the last of the following shall occur: (i) the expiration of three (3) business days after the time in which to appeal the Judgment has passed without any appeal having been taken, (ii) the expiration of three (3) business days after the time in which to appeal the Federal Derivative Judgment has passed

6

without any appeal having been taken, (iii) the expiration of three (3) business days after the time in which to appeal the State Derivative Judgment has passed without any appeal having been taken; (iv) if an appeal of the Judgment is taken, three (3) business days after the date the Judgment is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant; (v) if an appeal of the Federal Derivative Judgment is taken, three (3) business days after the date the Federal Derivative Judgment is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant; or (vi) if an appeal of the State Derivative Judgment is taken, three (3) business days after the date the State Derivative Judgment is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. For purposes of this paragraph, an "appeal" shall not include any appeal that concerns only the issue of attorneys' fees and reimbursement of costs or the Plan of Allocation of the Settlement Fund.

1.21. **"Fee and Expense Award"** means the fees and expenses awarded by the Court to Class Counsel after consideration of the Fee and Expense Application.

1.22. **"Final Approval Order"** means the order approving the Settlement substantially in the form of Exhibit B hereto.

1.23. **"HCI"** means defendants HCI Equity Partners, L.L.C. and HCI Equity Management, L.P.

1.24. **"Judgment"** means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit C.

7

1.25. **"Lead Counsel"** means Barrack, Rodos & Bacine, 600 West Broadway, Suite 900, San Diego, CA 92101 and 3300 Two Commerce Square, 2001 Market Street, Philadelphia, PA 19103.

1.26. **"Lead Plaintiff"** means Public Employees' Retirement System of Mississippi.

1.27. **"Net Settlement Fund"** means the Settlement Fund less (i) Court-awarded attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other Court-approved fees or expenses, including any award to Lead Plaintiff for reasonable costs and expenses pursuant to the PSLRA.

1.28. **"Notice"** means the Notice of Pendency and Proposed Class Action Settlement and Motion for Attorneys' Fees and Expenses, substantially in the form annexed hereto as Exhibit A-2, which is to be made available to Settlement Class Members pursuant to Court order.

1.29. **"Notice and Administration Expenses"** means all costs, fees, and expenses incurred in connection with providing notice to the Settlement Class and the administration of the Settlement, including, but not limited to: (i) providing notice of the proposed Settlement by mail, publication, and other means to Settlement Class Members; (ii) receiving and reviewing claims; (iii) applying the Plan of Allocation; (iv) communicating with Persons regarding the proposed Settlement and claims administration process; (v) distributing the proceeds of the Settlement; and (vi) fees related to the Escrow Account and investment of the Settlement Fund; provided, however, that Notice and Administration Expenses shall not include any of the Fee and Expense Award.

1.30. **"Person"** or **"Persons"** means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, their spouses, heirs, predecessors, successors, representatives, or assignees.

1.31. **"Plan of Allocation"** means a plan or formula of allocation of the Net Settlement Fund among Authorized Claimants. The Plan of Allocation is not part of the Settlement

8

Agreement and Defendants and the Released Parties shall have no responsibility therefore or liability with respect thereto.

1.32. **"Postcard Notice"** means the notice of the proposed settlement, substantially in the form annexed hereto as Exhibit A-1, which shall be mailed to Settlement Class Members who can be identified with reasonable effort as set forth in the Preliminarily Approval Order.

1.33. **"Preliminary Approval Order"** means the proposed Court order preliminarily approving the Settlement and providing for notice, substantially in the form annexed hereto as Exhibit A.

1.34. **"Proof of Claim"** or **"Claim Form"** means the Proof of Claim and Release form for submitting a claim, which, subject to Court approval, shall be substantially in the form annexed hereto as Exhibit A-2.

1.35. **"Qualified Settlement Fund"** means a fund within the meaning of Treasury Regulations § 1.468B-1.

1.36. **"Released Claims"** means Released Plaintiffs' Claims and Released Defendants' Claims.

1.37. **"Released Plaintiffs' Claims"** means any and all claims demands, losses, rights, and causes of action of any nature whatsoever, including both known or unknown, that have been or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, whether arising under federal, state, common, or foreign law, by Lead Plaintiff, any member of the class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, whether brought directly or indirectly against any of the Released Defendant Parties, which (a) arise out of, are based upon, or relate to in any way any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action, and (b) arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any

9

Roadrunner securities during the Class Period. "Released Plaintiffs' Claims" includes "Unknown Claims" as defined below and does not include any claims to enforce this Settlement.

1.38. **"Released Defendants' Claims"** means any and all claims, rights causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law, or administrative law, or any other law, rule or regulation, whether known or unknown, that have been or could have been asserted in the Action or any forum by the Defendants or any of them, or the successors and assigns of any of them, against the Lead Plaintiff, Class Members or their attorneys, arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims. "Released Defendants' Claims" includes "Unknown Claims" as defined below and does not include any claims to enforce this Settlement.

1.39. **"Released Defendant Parties"** means the Defendants, Roadrunner Transportation Systems, Inc., Mark A. DiBlasi, Peter Armbruster, Scott D. Rued, HCI Equity Partners, L.L.C., and HCI Equity Management, L.P. and their respective immediate family members, current and former parents, subsidiaries, affiliates, trustees, officers, directors, principals, employees, agents, employers, controlling persons, partners, insurance carriers, reinsurers, auditors, accountants, advisors, financial advisors, investment advisors, commercial bank lenders, investment bankers, creditors, administrators, estates, legal representatives, heirs, attorneys, predecessors, successors or assigns, divisions, joint ventures, general or limited partners or partnerships, limited liability companies, and any trust of which DiBlasi, Armbruster, or Rued is the settlor or which is for the benefit of a member of their immediate family; and, as to each of the foregoing, their respective current and former legal representatives, heirs, successors or assigns.

1.40. **"Released Parties"** means the Released Defendant Parties and the Released Plaintiff Parties, collectively.

1.41. **"Released Plaintiff Parties"** means each and every Lead Plaintiff, Settlement Class Member, and Class Counsel, and their respective immediate family members, current and

Case 2:17-cv-00144-PP   Filed 04/01/19   Page 11 of 37   Document 81-1

former parents, subsidiaries, affiliates, trustees, officers, directors, principals, employees, employers, controlling persons, agents, partners, insurers, reinsurers, auditors, accountants, advisors, financial advisors, investment advisors, commercial bank lenders, investment bankers, creditors, administrators, estates, legal representatives, heirs, attorneys, predecessors, successors or assigns, divisions, joint ventures, general or limited partners or partnerships, limited liability companies and any trust of which any Lead Plaintiff, Settlement Class Member or Class Counsel is the settlor or which is for the benefit of a member of their immediate family; and, as to each of the foregoing, their respective current and former legal representatives, heirs, successors or assigns.

1.42. **"Roadrunner"** means Roadrunner Transportation Systems, Inc.

1.43. **"Settlement Fund"** or **"Settlement Amount"** means the principal amount of Twenty Million Dollars ($20,000,000) in cash to be paid by wire transfer to the Escrow Agent pursuant to ¶3.1 of this Stipulation, plus any accrued interest.

1.44. **"Settling Parties"** means, collectively, each of the Defendants, and the Lead Plaintiff on behalf of itself and Class Members.

1.45. **"State Derivative Action"** means the action entitled *Flanagan v. Rued, et al.*, Case No. 17-cv-004401 (Circuit Court of Milwaukee County, State of Wisconsin).

1.46. **"Unknown Claims"** means any and all Released Claims which any Lead Plaintiff or Settlement Class Member or any other Released Plaintiff Party does not know or suspect to exist in his, her or its favor at the time of the release of the Released Defendant Parties, and any Released Defendants' Claims that any Defendant or any other Released Defendant Party does not know or suspect to exist in his, her or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it, might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each of the other Settlement Class Members, and each of the Released Defendant Parties shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have,

11

expressly waived and relinquished any and all provisions, rights and benefits conferred by Cal. Civ. Code § 1542, or any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff and the Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiffs' Claims and Released Defendants' Claims was separately bargained for and was a key element of the Settlement.

## 2.    SCOPE AND EFFECT OF SETTLEMENT

2.1.    The obligations incurred pursuant to this Settlement Agreement are subject to approval by the Court.

2.2.    For purposes of this Settlement only, Lead Plaintiff and the Defendants agree to: (i) certification of the Action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of the Settlement Class as defined in ¶1.6; (ii) the appointment of Lead Plaintiff as Class Representatives for the Settlement Class; and (iii) the appointment of Lead Counsel Barrack, Rodos & Bacine as Lead Counsel and, together with the laws firms Cross Law Firm, S.C. and Gadow Tyler, P.C., as Class Counsel for the Settlement Class.

2.3.    By operation of the Judgment or Alternative Judgment, as of the Effective Date, Lead Plaintiff and each and every other Settlement Class Member, on behalf of themselves, their immediate family members and each of their respective heirs, agents, representatives, attorneys, parents, subsidiaries, affiliates, executors, trustees, administrators, predecessors, successors,

assigns, any trust of which any Lead Plaintiff or Settlement Class Member is the settlor or is for the benefit of a member of their immediate family, and any entity acting on behalf of a Lead Plaintiff or Settlement Class Member, in their capacity as a Lead Plaintiff or Settlement Class Member, shall: (i) be deemed to have fully, finally and forever waived, released, discharged and dismissed each and every one of the Released Plaintiffs' Claims, as against each and every one of the Released Defendant Parties; (ii) be barred and enjoined from commencing, instituting, prosecuting or maintaining any of the Released Plaintiffs' Claims against any of the Released Defendant Parties; and (iii) be deemed to have covenanted not to sue any Released Defendant Party on the basis of any Released Plaintiffs' Claims or, unless compelled by operation of law, to assist any person in commencing or maintaining any suit relating to any Released Plaintiffs' Claim against any Released Defendant Party. The foregoing release is effective regardless of whether such Lead Plaintiff or Settlement Class Member has: (i) executed and delivered a Proof of Claim; (ii) received the Notice; (iii) participated in the Settlement Fund; (iv) filed an objection to the Settlement, the proposed Plan of Allocation, or any application by Plaintiffs' Counsel for attorneys' fees and expenses; or (v) had their claims approved or allowed. Nothing contained herein shall, however, bar any action or claim to enforce the terms of this Settlement Agreement or the Judgment or Alternative Judgment.

2.4. By operation of the Judgment or Alternative Judgment, as of the Effective Date, the Defendants, on behalf of themselves and each of their respective immediate family members, heirs, and present or former agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, directors, officers, general or limited partners, executors, trustees, administrators, predecessors, successors and assigns shall: (i) be deemed to have fully, finally and forever waived, released, discharged and dismissed each and every one of the Released Defendants' Claims, as against each and every one of the Released Plaintiff Parties; (ii) be barred and enjoined from commencing, instituting, prosecuting or maintaining any of the Released Defendants' Claims against any of the Released Plaintiff Parties; and (iii) be deemed to have covenanted not to sue any Released Plaintiff Party on the basis of any Released Defendants'

Case 2:17-cv-00144-PP   Filed 04/01/19   Page 14 of 37   Document 81-1

Claim or, unless compelled by operation of law, to assist any person in commencing or maintaining any suit relating to any Released Defendants' Claim against any Released Plaintiff Party. Nothing contained herein shall, however, bar any action or claim to enforce the terms of this Settlement Agreement or the Judgment or Alternative Judgment.

3. **THE SETTLEMENT CONSIDERATION AND USE OF SETTLEMENT FUNDS**

3.1.     In consideration of the Settlement and the release of the Released Plaintiff Parties' claims against the Released Defendant Parties, Defendants shall pay or cause the insurance carriers to pay a total of $20,000,000 (the "**Settlement Amount**"), as further described in ¶¶ 3.2 and 3.3 below, in settlement of the claims in the Action.

3.2.     Roadrunner shall cause its insurance carriers to pay and they shall pay $50,000 of the Settlement Amount into an escrow account maintained by the Escrow Agent, as defined below, within ten business (10) days of preliminary approval of the Settlement by the Court in this Action, which funds shall be used to cover Notice and Administration Expenses.

3.3.     Roadrunner shall also cause its insurance carriers to pay and they shall pay $17,850,000 and the Entity Defendants shall pay or cause to be paid $2,100,000 (the balance of the Settlement Amount – which balance calculates to $19,950,000) into an escrow account maintained by the Escrow Agent within thirty (30) days of the later of: (i) the Court's entry of the Final Approval Order in this action, or (ii) the Court's entry of the Final Approval Order in the Federal Derivative Action. If the agreed upon sum is not timely transferred to the Escrow Agent as set forth herein, Lead Plaintiff will have the option to terminate the Settlement or to move to enforce the Settlement.

3.4.     Within five (5) business days of the execution of the Settlement Agreement, Lead Counsel shall provide to Roadrunner's counsel wire transfer instructions for the transfer of the Settlement Amount to an escrow account maintained by the Escrow Agent and controlled by Lead Counsel, a form W-9, and other appropriate payee information. The Settlement Fund will

14

be governed by an escrow agreement that is mutually acceptable to Lead Plaintiff and Defendants.

3.5.    Except as set forth in ¶8.10, the Settlement Amount represents the entirety of the Defendants' and their insurance carriers' financial obligations under this Stipulation and in connection with this Settlement, meaning that it includes all attorneys' fees and expenses, Notice and Administration Expenses, Taxes, and costs of any kind whatsoever associated with the Settlement.  The full payment of the entire Settlement Amount into the Escrow Account in accordance with this paragraph fully discharges Defendants' and their insurance carriers' financial obligations under this Settlement Agreement and in connection with the Settlement, meaning that none of the Defendants or their insurance carriers shall have any other obligation to make any payment into the Escrow Account or to any Settlement Class Member, or any other Person, under this Settlement Agreement or as part of the Settlement once the payment described in this paragraph has been made.

3.6.    The Escrow Agent shall invest the Settlement Fund deposited pursuant to ¶3.1 hereof in short-term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof (or a mutual fund invested solely in such instruments) and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Settlement Fund shall bear all risks related to investment of the Settlement Fund.

3.7.    Except for the payment of Notice and Administration Expenses and Taxes, no funds may be distributed out of the Settlement Fund until the Effective Date of the Settlement.

3.8.    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Settlement Agreement, by an order of the Court, or with the written agreement of counsel for both the Lead Plaintiff and the Defendants.

3.9.    Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Settlement Agreement.

15

3.10.   All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

3.11.   In no event shall Lead Plaintiff, Defendants, or the Released Defendant Parties have any responsibility for or liability with respect to the Escrow Agent or its actions.

3.12.   (a)      The Settling Parties and their counsel agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.   In addition, the Settling Parties hereby agree to the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.

(b)      For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Claims Administrator. The Escrow Agent shall timely and properly file all tax returns necessary with respect to the Settlement Fund.  Such returns (as well as the election described in ¶3.12(a) hereof) shall be consistent with this ¶3.12 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶3.12(c) hereof.

(c)      All (a) Taxes (including any estimated Taxes, interest or penalties) on income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Defendants or the Released Defendant Parties on any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this ¶3.12 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶3.12) ("**Tax Expenses**"), shall be paid out of the Settlement Fund; in no event shall the Defendants or the Released Parties have any responsibility for or liability for Taxes or the Tax Expenses.   The Settlement Fund shall

indemnify and hold each of the Defendants and the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither the Defendants nor the Released Parties are responsible therefore nor shall they have any liability with respect thereto. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶3.12(a)-(c).

3.13.   The Company agrees that it shall take actions to reform and improve its corporate governance, disclosure control procedures, procedures for financial reporting, procedures for compliance with Generally Accepted Accounting Principles ("GAAP"), and legal and regulatory compliance procedures, which shall include:

a)      The appointment of a Chief Compliance Officer, who shall be responsible for, among other things, overseeing development, implementation and maintenance of a comprehensive legal compliance and ethics program;

b)      The appointment of a Chief Audit Executive who shall make quarterly written reports to the Audit Committee and annual written reports to the full board regarding the state of the Company's internal controls over financial reporting, disclosure controls procedures, and compliance policies, programs, and performance;

c)      The formation of an Ethics Committee which shall be chaired by the Chief Compliance Officer and include the Senior Vice-President of Human Resources, the Chief Audit Executive (or such other officers who perform such functions), and the Chief Financial Officer,

Case 2:17-cv-00144-PP   Filed 04/01/19   Page 18 of 37   Document 81-1

and which shall be responsible for, among other things, internal investigations into possible violations of the Company's policies or applicable laws;

d)      The designation of one of the independent directors as the "Lead Director" if the positions of Chief Executive Officer and Chairman of the Board are held by the same individual;

e)      Ensuring that the members of the Audit Committee of the Board are independent (as defined by applicable laws, rules and regulations),

f)      The development, implementation, and maintenance of policies to maintain director independence on the Board;

g)      Directing the Nominating Committee of the Board to consider corporate governance expertise when reviewing qualified candidates for new and/or open positions;

h)      Considering rotating the Company's independent accounting firm.

i)      The Company's obligation to maintain the governance changes described in paragraph 3.13(a)-(g) above shall terminate as of the earliest to occur of the (1) seventh anniversary of Court approval of this Settlement; (2) with respect to paragraph 3.13(d)-(e) only, the first date upon which the Company either (i) becomes a "controlled company" as defined in Section 303A of the New York Stock Exchange Listed Company Manual, or (ii) ceases to have a class of equity securities listed on a national securities exchange; (3) or the first date on which the Company ceases to have a class equity securities registered under Section 12 of the Securities Exchange Act of 1934.

j)      Should Roadrunner be disabled by reason of any bankruptcy filing from accomplishing all such corporate therapeutics as defined in 3.13(a)-(i) above, this Settlement shall nonetheless survive as to all other terms and any such bankruptcy shall not terminate the settlement or require the refund of the Settlement Fund. The Defendants other than Roadrunner shall have no obligations related to the corporate therapeutics described in ¶3.13(a)-(i) above.

3.14.    Defendants shall provide confirmatory discovery for Lead Plaintiff to conduct due diligence as defined by the "Supplemental Agreement" between the Settling Parties discussed in ¶ 7.4 below.

3.15.    In the event (i) the settlement of the Federal Derivative Action does not become effective; or (ii) the State Derivative Action is not resolved through entry of judgment (a) dismissing the case or (b) approving a settlement of the case, Defendants shall have the right, in their absolute and sole discretion, to terminate this Settlement. Defendants have also stipulated and agreed with the plaintiffs in the Federal Derivate Action that the settlement of that action shall be terminated if the Settlement of this Action does not become effective.

3.16.    Notwithstanding that the Effective Date of this Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, Notice and Administration Costs actually incurred and paid or payable, and required Taxes.

## 4.    PRELIMINARY APPROVAL ORDER, NOTICE AND SETTLEMENT HEARING

4.1.    Promptly after execution of the Settlement Agreement, the Settling Parties shall submit the Settlement Agreement, together with its Exhibits, to the Court and shall apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Settlement Agreement, the certification of the Class for settlement purposes, and approval for mailing the Postcard Notice, substantially in the form of Exhibit A-1 hereto, the provision of the Notice of Pendency and Proposed Settlement of Class Action, substantially in the form of Exhibit A-2 hereto and publication of a summary notice substantially in the form of Exhibit A-4 hereto.  The Notice shall include the general terms of the Settlement set forth in the Settlement Agreement, the proposed Plan of Allocation, the general terms of the Fee and Expense Application and the date of the Settlement Hearing regarding the request for entry of the Final Approval Order and Judgment.

**5. ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS AND SUPERVISION AND DISTRIBUTION OF SETTLEMENT FUND**

5.1.    The Claims Administrator shall administer and calculate the claims submitted by Class Members.

5.2.    The Settlement Fund shall be applied as follows:

(a)    to pay Class Counsel's attorneys' fees and expenses with interest thereon (the "Fee and Expense Award"), if and to the extent allowed by the Court;

(b)    to pay all Notice and Administrative Expenses;

(c)    to pay the Taxes and Tax Expenses; and

(d)    to distribute the balance of the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3.    In accordance with the terms of the Settlement Agreement, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)    Within thirty (30) days after the Settlement Hearing or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-3 hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release and as are reasonably available to the Authorized Claimant.

(b)    All Class Members who fail to timely submit a Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment.

(c)     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund on or after six (6) months from the date of the initial distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall, if feasible and economical, reallocate such balance among Authorized Claimants who have cashed their initial distribution and who would receive at least $10.00 from such re-distribution(s).  Thereafter, any balance remaining in the Net Settlement Fund shall be donated to an appropriate 501(c)(3) non-profit organization agreed upon by Lead Plaintiff and approved by the Court.

5.4.     This is not a claims-made settlement.  Upon the Effective Date of the Settlement, no portion of the Settlement Fund will be returned to the Defendants or their insurance carriers. Defendants and the Released Parties shall have no responsibility for, interest in, or liability for the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

5.5     No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or other entity designated by Lead Counsel arising from distributions made substantially in accordance with the Settlement Agreement and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.6     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Settlement Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Settlement Agreement, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Settlement Agreement or affect the finality of the Court's Judgment approving the Settlement

21

Agreement and the Settlement set forth therein, or any other orders entered pursuant to the Settlement Agreement.

### 6. Lead Counsel's Attorneys' Fees and Reimbursement of Expenses

6.1     Lead Counsel may submit a Fee and Expense Application to the Court for distributions from the Settlement Fund for an award of Class Counsel's attorneys' fees and reimbursement of expenses, including the fees of any experts or consultants retained by Lead Counsel, incurred in connection with prosecuting the Action.  Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2     Class Counsel's attorney's fees and expenses, as awarded by the Court, shall be paid from the Settlement Fund within thirty (30) days of the Effective Date.

6.3     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, are not part of the settlement set forth in the Settlement Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in the Settlement Agreement.  Any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement Agreement, or affect or delay the finality of the Judgment approving the Settlement Agreement and the settlement of the Action set forth therein.

6.4     Defendants and the Released Parties shall have no responsibility for or liability with regard to the Fee and Expense Award.

### 7. Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

7.1     The Effective Date of the Settlement Agreement shall be the first day after all the following events occur:

Case 2:17-cv-00144-PP   Filed 04/01/19   Page 23 of 37   Document 81-1

(a) The insurance carriers and Entity Defendants have timely made their payments to the Settlement Fund as required by ¶¶ 3.1, 3.2, and 3.3 hereof;

(b) Defendants have not exercised their option to terminate the Settlement Agreement pursuant to ¶ 7.7 hereof;

(c) the Court has entered the Preliminary Approval Order, as required by ¶ 4.1 hereof;

(d) the Court has entered the Final Approval Order and Judgment substantially in the form of Exhibit B hereto, or an Alternate Judgment acceptable to all the Settling Parties, and such Judgment (or Alternate Judgment) has become Final, as defined in ¶ 1.20 hereof; and

(e) the Federal Derivative Judgment and State Derivative Judgment have become Final, as defined in ¶ 1.20.

7.2 Upon the Effective Date, any and all remaining interest or right of Defendants in or to the Settlement Fund shall be absolutely and forever extinguished.

7.3 Defendants' counsel or Lead Counsel shall have the right to terminate the Settlement and this Settlement Agreement by providing written notice of their election to do so to all other parties hereto within thirty (30) days of: (a) the Court declining to enter the Preliminary Approval Order in any material respect; (b) the Court declining to approve this Settlement Agreement or any part of it (other than the grant or award of attorneys' fees and reimbursement of costs); (c) the Court declining to enter the Judgment in any respect; (d) the date upon which the Judgment, or Alternative Judgment (other than the award of attorneys' fees and reimbursement of costs) is modified or reversed in any respect by the Court of Appeals or the Supreme Court; or (e) the court's disapproval of the Federal Derivative Settlement. Defendants shall also have the right to terminate this Settlement at any time if the stay in the State Derivative Action is lifted or the State Derivative Action is not dismissed with prejudice following entry of the final approval order and judgment in the Federal Derivative Action. If defendants in the Federal Derivative Action elect to terminate the Federal Derivative Settlement because the State Derivative Action is not dismissed with prejudice following entry of the

23

District Court Approval Order in the Federal Derivative Action, Defendants shall also terminate this Settlement. Lead Counsel shall have the right to terminate this Settlement if the payments required under ¶3.1 hereof are not timely made.

7.4     If prior to the Settlement Hearing, the aggregate number of shares of Roadrunner common stock purchased by Persons who would otherwise be Members of the Class, but who request exclusion from the Class, exceeds the sum specified in a separate "Supplemental Agreement" between the Settling Parties, Roadrunner and HCI shall have, in their sole and absolute discretion, the option to terminate this Settlement Agreement in accordance with the procedures set forth in the Supplemental Agreement. Unless otherwise directed by the Court, the Supplemental Agreement will not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises.

7.5     Unless otherwise ordered by the Court, in the event the Settlement Agreement is terminated, then within ten (10) calendar days after the occurrence of such event, the Settlement Fund (including accrued interest), less any Notice and Administration Expenses, and less any Taxes or Tax Expenses paid or payable, shall be refunded by the Escrow Agent to the entities that made the payments pursuant to written instructions from Roadrunner or its successor-in-interest. At the request of counsel for Roadrunner, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to the entities that made the payments pursuant to written direction from Roadrunner or its successor-in-interest.

7.6     In the event the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated, the Settling Parties shall be restored to their respective positions in the Action as of November 19, 2018. In such event, and except as provided in ¶¶ 7.5 and 7.7 hereof, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated

as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to Class Counsel shall constitute grounds for cancellation or termination of the Settlement Agreement.

7.7     If the Effective Date does not occur, or if the Settlement Agreement is terminated pursuant to its terms, neither the Lead Plaintiff nor Lead Counsel shall have any obligation to repay the Notice and Administration Expenses actually and properly disbursed from the Settlement Fund, or any amount paid from the Settlement Fund for Taxes or Tax Expenses.  In addition, any Notice and Administration Expenses, Taxes or Tax Expenses already incurred or accrued and properly chargeable to the Settlement Fund at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Settlement Agreement prior to the balance being refunded.

7.8     Roadrunner's rights offering will have no impact on the claims or rights of any members of the Class arising from this Settlement.


8.     **MISCELLANEOUS PROVISIONS**

8.1     Roadrunner acknowledges that none of the proceeds from the Derivative Settlement that are being funded by Roadrunner's insurance carriers and are being used to fund the Settlement Amount, are being paid out of the corporate treasury of Roadrunner.  Defendants further acknowledge that they do not intend to file for bankruptcy and that they do not make any claim, nor do they assert any claim as to the moneys that the insurance carriers are using to fund the cash portion consideration of this Settlement.  Defendants Roadrunner, DiBlasi, Armbruster, and Rued further acknowledge that the $17.9 million of the Settlement Amount paid by their insurance carriers is not an asset of theirs, individually or collectively. The same Defendants and their duly authorized counsel, confirm that they have secured the commitment of their insurance

carriers to timely fund $17.9 million of the Settlement Amount and that said insurance carriers have so stipulated and agreed.

8.2     Without prejudice to the foregoing, if a case is commenced in respect to Roadrunner under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Fund, or any portion thereof, by or on behalf of Roadrunner to be a preference, voidable transfer, fraudulent transfer or similar transaction, and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by others, then, at the election of Lead Counsel, the Settling Parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of Roadrunner pursuant to this Settlement, which releases and Judgment shall be null and void, and the parties shall be restored to their respective positions in the litigation immediately prior to the execution of this Stipulation and any cash amounts in the Settlement Fund shall be returned as provided in ¶7.4 above.

8.3     Roadrunner warrants that, as to the payments made on behalf of Defendants, at the time of such payment that Roadrunner caused to be made pursuant to ¶3.1 above, Roadrunner was not insolvent nor did or will the payment required to be made on behalf of him or it render Roadrunner insolvent within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This warranty is made by Roadrunner and not by Roadrunner's Counsel.

8.4     The Settling Parties (a) acknowledge that it is their intent to consummate this Settlement and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Settlement Agreement and to exercise their commercially reasonable efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

8.5     The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Action.  The Settlement compromises claims which

are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Final Judgment will contain a statement that during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure. While retaining their right to deny liability, the Defendants agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis.

8.6     Neither the Settlement Agreement, the Settlement reflected therein, in whole or in part, or any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants or the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Defendants or the Released Parties may file the Settlement Agreement and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.7     All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement.

8.8     All the Exhibits to the Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

27

8.9     The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.10    The Settlement Agreement and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs, except that Roadrunner shall bear the costs for DiBlasi, Armbruster, and Rued.

8.11    As set forth in the Class Action Fairness Act of 2005 ("CAFA"), Roadrunner shall timely serve a CAFA notice within ten (10) calendar days of the filing of this Stipulation with the Court. Roadrunner shall be responsible for all costs and expenses related thereto.

8.12    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by the terms of this Stipulation or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which case the period shall run until the end of the next day that is not one of the aforementioned days. As used in the preceding sentence, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day appointed as a federal holiday.

8.13    This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

8.14    Lead Counsel, on behalf of the Settlement Class Members, warrants and represents that it is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class Members pursuant to the Settlement Agreement

28

to effectuate its terms and are also expressly authorized by Lead Plaintiff to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class Members that it deems appropriate.

8.15    Each counsel and Person executing the Settlement Agreement or any of its Exhibits on behalf of any party hereto hereby warrants that such counsel or Person has the full authority to do so.

8.16    The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

8.17    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

8.18    This Stipulation shall not be construed more strictly against one Party than another merely because it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

8.19    Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use commercially reasonable efforts to agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

8.20    If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, facsimile, or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

If to Lead Plaintiffs or Lead Counsel:          STEPHEN R. BASSER
                                                  SAMUEL M. WARD
                                                  BARRACK, RODOS & BACINE

29

One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

Or

JEFFREY A. BARRACK
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

If to Defendants:

ROBERT A. HOROWITZ
GREENBERG TRAURIG
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone:  (212) 801-9200
Email:  horowitzr@gtlaw.com

-and-

MICHAEL W. LIEBERMAN
CROWELL & MORING, LLP
1001 Pennsylvania Ave., NW
Washington, DC  20004
Telephone: (202) 624-2776
Facsimile: (202) 628-5116
MLieberman@crowell.com

-and-

JASON J. MENDRO
GIBSON DUNN & CRUTCHER,
LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Email: JMendro@gibsondunn.com

-and-

30

ANDREW R. DEVOOGHT
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago Illinois 60654
Telephone: (312) 464-3100
Fax: (312) 464-3111
adevooght@loeb.com
-and-

DOUGLAS BAUMSTEIN
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
Telephone: (212) 819-8586
dbaumstein@whitecase.com

8.22    The Settlement Agreement and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Wisconsin, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with and governed by, the internal, substantive laws of the State of Wisconsin, without giving effect to that State's choice-of-law principles.

8.23    Except as otherwise provided herein, each party shall bear his, her, or its own costs.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys dated as of _March 29_ , 2019.

DATED: _March 29_, 2019          Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com

_____

31

STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

JEFFREY A. BARRACK
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com

*Lead Counsel for Lead Plaintiffs Mississippi Public
Employees Retirement System of Mississippi and The
Proposed Class*

DATED: _____, 2019

_____

ROBERT A. HOROWITZ
PAUL FOX
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, N.Y. 10166
Telephone: (212) 801-2194horowitzr@gtlaw.com

*Counsel for Defendant Roadrunner Transportation
Systems, Inc.*

MICHAEL W. LIEBERMAN
CROWELL & MORING, LLP
1001 Pennsylvania Ave.,NW
Washington, DC 20004
Telephone: (202) 624-2776
Facsimile: (202) 628-5116
MLieberman@crowell.com

*Counsel for Defendant Mark A. DiBlasi*

32

STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

JEFFREY A. BARRACK
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com

*Lead Counsel for Lead Plaintiffs Mississippi Public
Employees Retirement System of Mississippi and The
Proposed Class*

DATED: _____, 2019

_____
ROBERT A. HOROWITZ
PAUL FOX
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, N.Y. 10166
Telephone: (212) 801-2194 horowitzr@gtlaw.com

*Counsel for Defendant Roadrunner Transportation
Systems, Inc.*

MICHAEL W. LIEBERMAN
CROWELL & MORING, LLP
1001 Pennsylvania Ave.,NW
Washington, DC 20004
Telephone: (202) 624-2776
Facsimile: (202) 628-5116
MLieberman@crowell.com

*Counsel for Defendant Mark A. DiBlasi*

32

STEPHEN R. BASSER

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

JEFFREY A. BARRACK
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jbarrack@barrack.com

*Lead Counsel for Lead Plaintiffs Mississippi Public
Employees Retirement System of Mississippi and The
Proposed Class*

DATED: _____, 2019




ROBERT A. HOROWITZ
PAUL FOX
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, N.Y. 10166
Telephone: (212) 801-2194 horowitzr@gtlaw.com

*Counsel for Defendant Roadrunner Transportation
Systems, Inc.*

March 29, 2019

MICHAEL W. LIEBERMAN
CROWELL & MORING, LLP
1001 Pennsylvania Ave.,NW
Washington, DC 20004
Telephone: (202) 624-2776
Facsimile: (202) 628-5116
MLieberman@crowell.com

*Counsel for Defendant Mark A. DiBlasi*

32

_____

JASON J. MENDRO
GIBSON DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
JMendro@gibsondunn.com

*Counsel for Defendants HCI Equity Partners, L.L.C.
and HCI Equity Management, L.P.*

_____

ANDREW R. DEVOOGHT
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago Illinois 60654
Telephone: (312) 464-3100
Fax: (312) 464-3111
adevooght@loeb.com

*Counsel for Defendant Peter Armbruster*

_____

DOUGLAS BAUMSTEIN
WHITE & CASE LLP
1221 Avenue of the Americas
New York New York 10020-1095
Telephone: (212) 819-8586
dbaumstein@whitecase.com

*Counsel for Defendant Scott Rued*

### ORDER

The above Stipulation of Settlement is hereby approved.

IT IS SO ORDERED.


Dated _____         _____

                                    THE HONORABLE PAMELA PEPPER
                                    UNITED STATES DISTRICT JUDGE

33

JASON J. MENDRO
GIBSON DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
JMendro@gibsondunn.com

*Counsel for Defendants HCI Equity Partners, L.L.C. and HCI Equity Management, L.P.*


ANDREW R. DEVOOGHT
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago Illinois 60654
Telephone: (312) 464-3100
Fax: (312) 464-3111
adevooght@loeb.com

*Counsel for Defendant Peter Armbruster*

DOUGLAS BAUMSTEIN
WHITE & CASE LLP
1221 Avenue of the Americas
New York New York 10020-1095
Telephone: (212) 819-8586
dbaumstein@whitecase.com

*Counsel for Defendant Scott Rued*


## ORDER

The above Stipulation of Settlement is hereby approved.

IT IS SO ORDERED.


Dated _____     _____
                                  THE HONORABLE PAMELA PEPPER
                                  UNITED STATES DISTRICT JUDGE


33