UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

IN RE ROADRUNNER TRANSPORTATION          Case No.: 17-cv-144-LA
SYSTEMS, INC. SECURITIES LITIGATION

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION, CERTIFICATION OF A SETTLEMENT CLASS**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.  DISCRIPTION OF THE LITIGATION .......................................................................... 2

    A.   History of the Litigation ......................................................................................... 2

    B.   Summary of the Allegations of the Complaint ....................................................... 4

    C.   Lengthy Settlement Discussions and Mediation Before an Experienced Mediator
        Culminating in an Arm's-Length Settlement ......................................................... 5

    D.   Preliminary Settlement Approval is Granted and the Notice Program Undertaken .......... 6

III. THE SETTLEMENT SHOULD BE APPROVED BY THE COURT ............................... 8

    A.   The Standard for Judicial Approval ........................................................................ 8

    B.   The Settlement Satisfies the Criteria for Final Approval ....................................... 10

        1.   The Strength of Lead Plaintiffs Case Compared to the Amount Offered in
            Settlement ................................................................................................... 10

        2.   The Complexity, Length and Expense of Further Litigation Supports Approval of the
            Settlement ................................................................................................... 14

        3.   The Defendants' Ability to Pay and Collectability Concerns Support Approval of the
            Settlement ................................................................................................... 16

        4.   The Reaction of Class Members Supports Approval of the Settlement ..................... 19

        5.   Lead Counsel's Endorsement of the Settlement, Achieved through Arm's-length
            Negotiations Without Collusion and Recommended by a Respected, Reputable
            Private Mediator, Supports Approval ........................................................... 20

        6.   The Stage of the Proceedings and the Amount of Formal and Informal Investigation
            or Discovery Support Approval .................................................................... 23

IV.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE
    APPROVED ......................................................................................................... 25

V.   SETTLEMENT CLASS MEMBERS HAVE BEEN PROVIDED THE BEST NOTICE
    PRACTICABLE .................................................................................................. 26

Case 2:17-cv-00144-LA   Filed 08/19/19   Page 2 of 37   Document 94

VI.     FINAL CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT IS
        MERITED...................................................................................................................... 28

VII.    CONCLUSION.............................................................................................................. 29

ii

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ......................................................................... *passim*

*AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................ 10, 15, 19

*Boring v. Bed Bath & Beyond of Cal. L.L.C.*,
  No. 12-cv-05259-JST, 2014 U.S. Dist. LEXIS 90258 (N.D. Cal. June 30, 2014) ................ 29

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ... 26

*Clinton v. Jones*,
  520 U.S. 681 (1997) ......................................................................................... 12

*Critical Path, Inc. Secs. Litig. v. Critical Path, Inc.*,
  C 01-00551 WHA, No. C 01-03756 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) 24

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
  213 F.3d 454 (9th Cir. 2000) ........................................................................... 25

*EEOC v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) ........................................................................ 9, 20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143 (N.D. Tex. Apr. 25, 2018) ................ 22

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ............................................................................ 9

*GE Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) .......................................................................... 9

*Glass v. UBS Fin. Servs.*,
  331 F. App'x 452 (9th Cir. 2009) ..................................................................... 21

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............................... 24-25

*Goldsmith v. Technology Sols. Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ................................. 8

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhousecoopers*,
  212 F.R.D. 400 (E.D. Wis. 2002) ................................................................... *passim*

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018) ..................... 21

*Hispanics United v. Vill. of Addison*,
  988 F. Supp. 1130 (N.D. Ill. 1997) ........................................................... 8, 20, 23

*Howard v. Liquidity Servs.*,
No. 14-1183 (BAH), 2018 U.S. Dist. LEXIS 172321 (D.D.C. Oct. 5, 2018) ....................... 22

*Ikon Office Sols., Inc. v. Stuart* (*In re Ikon Office Sols., Inc., Sec. Litig.*),
194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................... 15, 25

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................... 13-14

*In re Apollo Grp., Inc. Secs. Litig.*,
No. CV 04-2334-PHX-JAT(Consolidated), 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4,
2008) ................................................................................................................... 14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .................................................................................. 13

*In re Heritage Bond Litig.*,
MDL CASE NO.: 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)
................................................................................................................................. 25

*In re Ikon Office Sols., Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................. 15

*In re Mex. Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................................. 20

*In re Nat'l Student Mktg. Litig.*,
68 F.R.D. 151 (D.D.C. 1974) ............................................................................ 14-15

*In re Osi Sys.*,
No. 14-cv-2910-NWF (MRWx), 2017 U.S. Dist. LEXIS 221033 (C.D. Cal. May 2, 2017) . 22

*In re Rayonier Secs. Litig.*,
No. 3:14-cv-1395-J-32JBT, 2017 U.S. Dist. LEXIS 167510 (M.D. Fla. Oct. 5, 2017) ........ 22

*In re TD Ameritrade Account Holder Litig.*,
No. C 07-4903 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 12, 2011) ................................... 25

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ......................................................................... 15

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ......................................................................... *passim*

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................................. 15

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ............................................................................... 25

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co.*,
834 F.2d 677 (7th Cir. 1987) ...................................................................... 9-10, 24

*Matrixx Initiatives, Inc. v. Siracusano*,
131 S. Ct. 1309 (2011) ........................................................................................... 10

iv

*N.J. Carpenters Health Fund v.Royal Bank of Scot. Grp., Pub. Ltd. Co.*,
No. 08 Civ. 5310 (DAB), 2019 U.S. Dist. LEXIS 39807 (S.D.N.Y. Mar. 8, 2019) ............. 22

*Pension Tr. Fund v. Assisted Living Concepts, Inc.*,
No. 12-CV-884-JPS, 2013 U.S. Dist. LEXIS 199190 (E.D. Wis. Dec. 19, 2013) ................ 21

*Retsky Family Ltd. P'ship v. Price Waterhouse L.L.P.*,
No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 6, 2001) .................................................. 15

*Schueneman v. Arena Pharms., Inc.*,
No. 3:10-CV-01959-CAB-BLM, 2018 U.S. Dist. LEXIS 63780 (S.D. Cal. Apr. 12, 2018) . 22

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................................... 23

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ................................................................................................ 19

*Smoot v. Wieser Bros. Gen. Contr.*,
No. 15-cv-424-jdp, 2016 U.S. Dist. LEXIS 57148 (W.D. Wis. Apr. 28, 2016) ................... 20

*United States v. Kordel*,
397 U.S. 1 (1970) ................................................................................................................. 12

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010) ............................................................................................................. 27

*Universal Marine Ins. Co. v. Beacon Ins. Co.*,
768 F.2d 84 (4th Cir. 1985) ................................................................................................... 9

*Warner Commc'ns Sec. Litig.*,
798 F.2d 35 (2d Cir. 1986) ................................................................................................... 15

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993) ............................................................................... 25, 26

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ................................................................................................. 9

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ................................................................................... 10, 19, 23

Statutes

15 U.S.C. § 10(b) .................................................................................................................. 10

15 U.S.C. § 20(a) .......................................................................................................... 3, 4, 10

15 U.S.C. § 21D(a)(3)(B) (2018) ............................................................................................ 2

15 U.S.C. § 23.164(4) ........................................................................................................... 21

15 U.S.C. § 78j(b) (2018) ....................................................................................................... 4

15 U.S.C. § 78u-4(a)(7) (2018) .............................................................................................. 1

v

Rules

Fed. R. Civ. P. 23 ................................................................................ 1, 9, 25, 29

17 C.F.R. § 78aa .................................................................................. 4

Lead Plaintiff, Public Employees Retirement System of Mississippi, through Lead Counsel, Barrack Rodos & Bacine ("Barrack"), submits this Memorandum of Points and Authorities in Support of its motion for final approval of the proposed $20 million settlement (the "Settlement") of this securities class action on behalf of a proposed settlement class (the "Settlement Class") as defined on page 28 at fn. 14 below.

## I.    INTRODUCTION

On June 19, 2019, the Court granted preliminary approval of the Settlement, entered into between Lead Plaintiff and Defendants Roadrunner Transportation Services, Inc., ("Roadrunner") Mark A. DiBlasi ("DiBlasi"), Peter R. Armbruster ("Armbruster"), Scott D. Rued ("Rued"), HCI Equity Partners L.L.C. and HCI Equity Management L.P., (collectively "Defendants").  ECF No. 85.

Lead Plaintiff respectfully submits that the Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser recovery (or no recovery) if this Action proceeded through class certification, dispositive motions, trial and appeal. The Settlement is the result of informed and extensive arm's-length negotiations between and among highly experienced counsel, facilitated by a respected mediator.  The Settlement is clearly fair and reasonable. Adequate notice constituting the best notice practicable under the circumstances, and in full compliance with the notice requirements of due process, has been given to potential class members in accordance with Rule 23 of the Federal Rules of Civil Procedure and Section 21D(a)(7) of the Securities and Exchange Act of 1934, 15 U.S.C. Section 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act ("PSLRA").  The Plan of Allocation is fair, reasonable and adequate.  It establishes a formula recommended by experienced, class counsel, with the assistance of an experienced damages expert, and is founded upon a reasonable basis.  The Plan of Allocation does not discriminate against any class member or treat them disproportionally.  Lead Plaintiff will receive a *pro rata* distribution from the Net Settlement Fund based on the same formulas that apply to the recovery of all similarly situated members of the

1

Settlement Class. When considering the significant risks of collectability in the event of any liability verdict and judgment, the Settlement represents an outstanding result for the Settlement Class and should be approved as fair and reasonable.

## II.      DISCRIPTION OF THE LITIGATION

### A.      History of the Litigation

Commencing January 31, 2017, and after Roadrunner disclosed that it would have to restate its prior financial results, which it cautioned investors not to rely upon, three putative securities class action complaints were filed in the United States District Court for the Eastern District of Wisconsin on behalf of those who purchased or acquired Roadrunner's publicly traded common stock on the open market during certain time periods.

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Goss v. Roadrunner, et al.* | 2:17-cv-0014-PP | January 31, 2017 |
| *Strougo v. Roadrunner, et al.* | 2:17-cv-00147-PP | February 1, 2017 |
| *Public Employees Retirement System of Mississippi v. Roadrunner, et al.* | 2:17-cv-00474-PP | March 31, 2017 |

These case were consolidated for all purposes by an Order of the Court filed May 19, 2017, and are collectively referred to herein, as the "Action." On May 19, 2017, the Court appointed the Public Employees Retirement System of Mississippi as Lead Plaintiff, pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the PSLRA, and approved its selection of Barrack, Rodos & Bacine ("Barrack") to serve as Lead Counsel.

On January 31, 2018, Roadrunner filed with the Securities and Exchange Commission, and provided public notice of, a final restatement of its previously reported financial results, together with restated interim financial results for quarterly periods ("Restatement"). At all times material, before and after the Restatement, MPERS, by and through its Lead Counsel, assisted by a private

investigation firm, engaged in an extensive investigation of the Company. The extensive investigation included numerous interviews of former Roadrunner employees and independent contractors. Altogether, over thirty witnesses were interviewed in order to gather information in support of Lead Plaintiff's claims. Lead Counsel also conducted extensive internet research and extensively reviewed information about Roadrunner, the HCI Defendants, and the individual defendants, as well as information pertaining to the trucking industry. Forensic experts were engaged to assist with developing the claims asserted on behalf of Class Members. To that end, Lead Counsel conferred with a trucking industry expert. And, given the nature of the case, Lead Counsel extensively conferred with forensic accountants who assisted in the investigation and presentation of the accounting claims, as well as providing further consulting services in support of the Action.

On March 12, 2018, based on its extensive investigation both prior to and after the Restatement, Lead Plaintiff filed a comprehensive 161-page Consolidated Amended Class Action Complaint for Violation of the Federal Securities Law (the "Complaint"), on behalf of all purchasers of Roadrunner's publicly traded common stock on the open market during the period March 14, 2013 through January 30, 2017, inclusive, (the "Class Period"). ECF No. 34. The Complaint alleges violations of §§10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, as to Roadrunner, DiBlasi, and Armbruster, and violations of Section 20(a) as to Rued, and the HCI entity defendants, ("HCI").

On July 23, 2018, each of the six defendants moved to dismiss the Complaint, filing five separate motions; one motion each for and on behalf of Roadrunner, DiBlasi, Armbruster, and Rued, and one joint motion on behalf of the HCI defendants. ECF Nos. 48-57, 59-60. The Defendants' motions were extensive, covering a gamut of critical issues with respect to the sufficiency of the Complaint and the pleading standards applicable in a securities action arising under the PSLRA. On September 21, 2018, Lead Plaintiff, via duly appointed Lead Counsel, with contributions from other participating class counsel, filed one omnibus opposition to the three separate Motions to Dismiss filed by Roadrunner, DiBlasi, and Armbruster, ECF No. 70, and one omnibus opposition to the two separate Motions to Dismiss filed by HCI and Rued. ECF No. 71.

3

### B. Summary of the Allegations of the Complaint

The Complaint alleges that Roadrunner, DiBlasi, and Armbruster violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 78aa, by making allegedly material misstatements and omissions relating to Roadrunner's business and financial statements and results, and asserts claims against Rued and the HCI entities for violating Section 20(a) of the Exchange Act as control persons.

Summarizing briefly, Lead Plaintiff's Complaint alleges that, over an extended period of time, Roadrunner's statements of its financial results under-reported more than $94 million of operating expenses incurred by the Company, consequently overstating its net income, performance metrics, and earnings per share, and causing its debt leverage ratios to appear more favorable. The Complaint further alleges that the Company's statements did not adequately disclose the flaws and the depth of costs or expense exposure occasioned by its independent driver tractor lease purchase guarantee program, which had been designed as a recruiting inducement, while assuring the investment community that associated lease guarantees had no material impact on the Company's financial results, that any guaranteed payments were "*de minimis*" and that its "off balance sheet arrangements" did not present a material risk to investors.

Lead Plaintiff alleges that the falsity of the Company's previously reported financial statements dating back to 2012, and the flaws and embedded cost exposure of its independent driver tractor lease guarantee program, began to be revealed to investors on January 30, 2017. Among other things, the Company stated at that time that it had discovered "errors" in its accounting with respect to two acquired operational subsidiaries and that investors should no longer rely on its previously reported financial results, while further disclosing that it had discovered material weakness in its internal controls. One year later, on January 31, 2018, the Company issued a formal Restatement of its previously reported financial results dating back to 2012, acknowledging material weaknesses in controls over financial reporting and disclosing additional adverse facts and events associated with the costs and structure of its independent driver tractor lease purchase guarantee program. Meanwhile, during the Class Period, the Company secured $40.5 million from the investment community via a public offering dated August 2013, and defendants DiBlasi and Armbruster engaged in insider selling of substantial portions of their Roadrunner stock.

Defendants denied and continue to deny: (i) all the claims alleged by Lead Plaintiff on behalf of the class, including all claims asserted in any pleading, including the Complaint; (ii) all allegations of wrongdoing, fault, liability, loss causation, or damages to Lead Plaintiff and the Settlement Class; and (iii) that they committed any act or omission giving rise to any liability or violation of law, including the federal securities laws. Defendants contended and continue to contend that, at all times, they acted properly, in good faith, and consistent with their legal duties and obligations. *See* ECF No. 81-1 at 3-4 (Stipulation and Agreement of Settlement).

### C. Lengthy Settlement Discussions and Mediation Before an Experienced Mediator Culminating in an Arm's-Length Settlement

While mindful of the economic realities impacting Roadrunner and other defendants with respect to collectability during the vigorous and aggressive pursuit of the claims in this case, as Lead Plaintiff's 161-page complaint and extensive investigation illustrates, Lead Plaintiff and Lead Counsel met with the CEO of Roadrunner, counsel for Defendants, and representatives of Defendants' insurance carriers, among others, on May 7, 2018. The Parties, including insurance carrier representatives, participated in an arm's-length, all day mediation in Newport Beach, California, before retired United States District Court Judge Layn R. Phillips ("Judge Phillips").[1] Declaration of Stephen R. Basser in Support of (1) Final Approval of Settlement, (2) Approval of Plan of Allocation and (3) Award of Attorney's Fees and Payment of Litigation Expenses ("Basser Decl.") at ¶ 55. In connection with the mediation process, the Settling Parties summarized their respective positions. This initial all-day mediation session was not successful. However, during the interval of time between adjourning the May 2018 mediation and the commencement of motion practice by the filing of five Motions to Dismiss, as discussed above, the Parties continued to engage in discussions with a view toward potential settlement of the Action.

The process toward a fair and reasonable settlement of the Action was further informed by Lead Counsel's extensive briefing on, and opposition to, Defendants' Motions to Dismiss, and

---

[1]    Judge Phillips is a well-regarded private mediator with considerable knowledge and expertise in the field of federal securities laws. According to Judge Phillips' website (www.phillipsadr.com), he has been involved in the mediation and successful resolution of numerous complex disputes, achieving aggregate settlements in the billions of dollars.

further extensive analysis of relevant jurisprudence. After vigorously presenting their respective positions, (but before Defendants' reply briefing deadline), the Settling Parties agreed to a second mediation with Judge Phillips, which he conducted on October 22, 2018. While the session with Judge Phillips made progress, it concluded without a resolution of the Action. Further negotiation continued.

Then on November 19, 2018, after additional arms-length settlement communications directly between counsel for the parties, Lead Plaintiff and the Defendants reached an agreement in principle to settle the Action for $20 million by executing a "Confidential Settlement Term Sheet and Memorandum of Understanding." Further settlement discussions continued addressing all terms of a full blown agreement, culminating in the Parties entering into a more fulsome understanding and memorialization of all terms of agreement, which were eventually embodied in the Settlement Agreement of March 29, 2019. ECF No. 81-1. Basser Decl. ¶ 57.

### D.    Preliminary Settlement Approval is Granted and the Notice Program Undertaken

The Settling Parties' detailed Settlement Agreement and supporting documents, along with Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, were submitted to the Court on April 1, 2019. ECF Nos. 80-81. On June 19, 2019, the Court issued an Order Granting Preliminary Approval of the Settlement and Approving the Dissemination of the Notice, Proof of Claim, Postcard Notice and Summary Notice to the Settlement Class ("Preliminary Approval Order"). ECF No. 85.[2] Copies of the Postcard Notice, Summary Notice, and Amended Notice, together with the Proof of Claim, are attached as Exs. A, C-F to the Declaration of Sandy Pappas Regarding Dissemination of the Notice to the Class ("Pappas Decl."), Basser Decl. Ex. 1. In granting preliminary approval of the Settlement, the Court

---

[2]      Pursuant to the Court's Minute Entry of August 6, 2019 (ECF No. 90), and subsequent Order of August 14, 2019 (ECF No. 92), on August 14, 2019, Lead Plaintiff, working in conjunction with Heffler Claims Group ("Heffler"), caused an Amended Notice to be disseminated via the websites of Lead Counsel, Heffler, and on a website, www.roadrunnersettlement.com.

also appointed Heffler as the claims administrator and set a hearing date of September 23, 2019 to consider the fairness, reasonableness, and adequacy of the Settlement and Plan of Allocation.

In compliance with the Preliminary Approval Order, and under the supervision of Lead Counsel, Heffler mailed copies of the Postcard Notice to (1) all potential members of the Settlement Class who could be reasonably identified and (2) known brokers/nominees who may have purchased Roadrunner common stock for the benefit of investors. Pappas Decl. ¶¶ 2-8. Heffler also issued the Summary Notice for publication in *Investor's Business Daily* and dissemination via *PR Newswire*. *Id.*, ¶ 11. To date, Heffler has mailed or is in the process of mailing, more than 46,400 Postcard Notices. *Id.* ¶ 8. In addition, the Notice, the subsequent Amended Notice, Proof of Claim, and other documents relevant to the Settlement were posted on the websites of Lead Counsel, Heffler, and on a website, www.roadrunnersettlement.com, maintained by Heffler. Pappas Decl. ¶ 9. The Amended Notice describes the claims asserted in the Action, the contentions of the Settling Parties, a history of the litigation of the Action, the terms of the Settlement, the Proposed Plan of Allocation, the maximum amount of the fees and expenses that Lead Counsel intends to seek, the right of Settlement Class Members to (i) be excluded from the Settlement Class, (ii) or object to the Settlement, and (iii) make an appearance the Final Approval Hearing, and apprises Settlement Class Members of all deadlines relevant to the exercise of the above rights. Pappas Decl. Ex. C.

The response of the Settlement Class to the Settlement has been overwhelmingly positive. As of August 16, 2019, no requests to be excluded from the Settlement Class have been received, and no objections have been received. Pappas Decl. at ¶ 12. This response is strong indicia of the fairness, reasonableness, and adequacy of the Settlement.

The Settlement achieves an immediate and substantial cash recovery for members of the Settlement Class and is unquestionably superior to the significant risk that, were this Action to proceed to trial, there might be no recovery at all, or even if there was a verdict and judgment in favor of the plaintiff and the Class, the likelihood of collectability from the Roadrunner Defendants, in particular, would be gravely prejudiced by the Company's continuing financial

<div align="center">7</div>

woes. Indeed, to protect against this risk, Lead Plaintiff demanded settlement terms that protected the Settlement Fund in the event of a bankruptcy filing by Roadrunner. Basser Decl. ¶ 53. At bottom, Lead Plaintiff, along with Lead Counsel – based upon their evaluation of the facts and applicable law and the recognition of the risk and expense to continue litigation of the Class Action – submit that the Settlement is in the best interest of the Settlement Class, and should be approved by the Court as fair and reasonable. *See* Basser Decl. ¶ 10; *see also* Declaration of Special Assistant Attorney General Jacqueline H. Ray on Behalf of the Public Employees' Retirement System of Mississippi in Support of: (A) Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (B) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Ray Decl."), at ¶¶ 7-8, attached as Ex. 2 to the Basser Decl. Analysis of the relevant factors that the Seventh Circuit requires be considered demonstrates that this Settlement merits this Court's approval.

## III. THE SETTLEMENT SHOULD BE APPROVED BY THE COURT

### A. The Standard for Judicial Approval

There is an overriding public interest in settling and quieting litigation. This is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (federal courts naturally favor the settlement of class action litigation). In *Goldsmith v. Tech. Solution Co.*, No. 92C4374, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995), the Court acknowledged:

> [T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the Class Action context in particular, there is an overriding public interest in favor of settlement.

(citations and quotations omitted). *See also Hispanics United of DuPage Cnty. v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) ("Compromise is particularly appropriate in complex class actions"). "Federal courts look favorably upon the Settlement of class action lawsuits." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 811 (E.D. Wis. 2009)

8

(citing *Isby*, 75 F.3d at 1196; *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 88-89 (7th Cir. 1985); *Metro. Hous. Dev. Corp. v. Vill of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980).) In deciding whether a class action settlement should be approved, and as required pursuant to Rule 23(e), courts must determine whether the proposed settlement is fair, reasonable and adequate. *Isby*, 75 F.3d at 1196; *Hiram Walker*, 768 F.2d 88-89; *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (citing Rule 23(e)(2) of the Federal Rules of Civil Procedure).

Courts in the Seventh Circuit consider the following factors when evaluating the fairness of a class action Settlement:

(1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement;

(2) the defendant's ability to pay;

(3) the complexity, length and expense of further litigation;

(4) the amount of opposition to the settlement;

(5) any presence of collusion in reaching a settlement;

(6) the reaction of members of the class to the settlement;

(7) opinions of competent counsel; and

(8) the stage of the proceedings and amount of discovery completed.

*See Armstrong v. Bd. Of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980); *Isby,* 75 F.3d at 1199; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).

The Settlement must be viewed in its entirety rather than focusing on any individual component. *Armstrong*, 616 F.2d at 315. It must also be considered in the light most favorable to the Settlement. *Id*. The proceedings to approve a settlement should not be transformed into a mini-trial on the merits. *Hiram Walker*, 768 F.2d at 888-889 (the "District Court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights"); *Isby*, 75 F.3d at 1196-97 (declining objecting members' invitation to determine merits of legal issues that remain unresolved, stating that this was a "necessary consequence of

9

settlement"). *See also Mars Steel Corp. v. Cont 'I Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 684 (7th Cir. 1987); *Armstrong,* 616 F.2d at 314-15. Courts should hesitate to substitute their own judgment for the judgment of the litigants and their counsel. As the Seventh Circuit has held:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

*Armstrong,* 616 F.2d at 315.

## B. The Settlement Satisfies the Criteria for Final Approval

### 1. The Strength of Lead Plaintiffs Case Compared to the Amount Offered in Settlement

When determining whether a settlement is fair and reasonable, courts necessarily are required to look at the strength of plaintiff's case on the merits balanced against the amount offered in the Settlement. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (citation omitted). *See also McKinnie*, 678 F. Supp. 2d at 814 (E.D. Wis. 2009) (quoting *Synfuel Techs. Inc. v. DHL Express (U.S.A.), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)); *see also Isby*, 75 F.3d at 1196; *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2001) ("*AT&T Mobility I*"). When analyzing this factor, courts consider whether the proposed amount is reasonable in light of the risk of proceeding with the litigation. *Wong,* 773 F.3d at 864. *See also AT&T Mobility I*, 789 F. Supp. 2d at 959, 961, 963-964.[3]

---

[3] In order to establish a securities fraud claim under Section 10(b) of the Exchange Act, as amended by the PSLRA, it is incumbent on the Lead Plaintiff to demonstrate by a preponderance of the evidence to the fact finder – whether it is the jury or the court – that (1) defendants made false statements or omissions; (2) of material fact; (3) with *scienter*; (4) in connection with the purchase of Roadrunner stock; (5) upon which the Class justifiably relied; and (6) the false statements proximately caused the class's damages, i.e., loss causation. *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011). And in order to prevail against the HCI Defendants – Rued and the two HCI corporate entities – on Lead Plaintiff's control person claims under Section

Lead Plaintiff believes that the claims asserted in the Complaint have merit.  However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the Defendants through trial and appeal.  They have taken into account the uncertain outcome and risk of any litigation, especially in complex litigation such as this Action, as well as the difficulties and delays inherent in such litigation.  They are mindful of the inherent problems of proof under, and possible defenses to, the securities law violations asserted in the Action.  They have been mindful of the existence of a criminal indictment brought by the United States Attorney's Office for the Eastern District of Wisconsin charging two former managerial-level employees of Roadrunner, who did not themselves issue the alleged false statements and are not defendants in this Action, and the subsequent joinder of defendant Armbruster in the indictment, whose defenses have been significantly eroding insurance coverage and corporate assets.[4]  And they have been mindful of the risks involved in recovering on any damages award or judgment in this Action: a risk that was substantially heightened by the dire financial condition of the Company through much of the litigation.

Although Lead Plaintiff believed that this case is compelling – strong enough to have survived the pleading stage – it faced numerous obstacles in proving both liability and damages, as a consequence of which there was no certainty whatsoever that Lead Plaintiff and the Class would prevail on either.  Basser Decl. ¶ 37.  Importantly, there is no certainty that if Lead Plaintiff did prevail, the actual economic recovery would have exceeded the Settlement. Indeed, that is highly questionable given the economic position of Roadrunner, and the Defendants' wasting insurance coverage paying for the vigorous defense they were being provided by several formidable defense firms.  The entire litigation process could span several years, delaying recovery

---

20(a) of the Exchange Act, it would have been necessary to demonstrate that they maintained "the power to direct or cause the direction of the management and policies" of Roadrunner. 17 C.F.R. § 240.12b-2.

[4]     These indictments primarily relate to accounts receivable accounting.  The Restatement primarily relates to the material underreporting of "operating expenses." *See generally,* Basser Decl. Ex. 61.

by Class Members and further increasing the risk that an intervening change in the law or other unforeseen circumstances could delay, reduce or even eliminate a recovery. Basser Decl. ¶ 49.[5]

Defendants adamantly denied any culpability throughout the litigation. They have mounted aggressive defenses including those that could potentially bar any class recoveries. There could be no way of predicting what interpretations, inferences, or testimony a jury would accept. If the jury sided with Defendants regarding theories or defenses that had the potential for eviscerating Plaintiff's securities fraud claims, the Class may have recovered absolutely nothing. Lead Counsel understands that Defendants could and would vigorously litigate this case through summary judgment and trial, and is aware of the risk that judgment could be returned in favor of Defendants. *See also Great Neck Capital Appreciation Inv. P'Ship, L.P. v. PricewaterhouseCoopers*, 212 F.R.D 400, 409-10 (E.D. Wis. 2002) ("[t]he mere possibility that the case might receive more if the case were fully litigated, is not a good reason for disapproving the settlement. If the case were fully litigated there is also a possibility that Plaintiff could receive less").

By contrast, the $20 million Settlement is immediate. The Settlement eliminates the risk that would ensue from further litigation. Even if the Court did not dismiss any of the claims asserted in the complaint, including the control person claims against Roadrunner's equity investor, the HCI entities, and their agent Rued, there was still the risk that claims could be dismissed at the summary judgment stage – particularly with respect to such equity investor "control person" entities – or that the jury could determine that liability is simply not established. There was a risk that a fact finder could determine that certain information Lead Plaintiff claimed was concealed or misrepresented was in fact adequately disclosed before purchases were made by Class Members leading to their losses, thus potentially reducing any damages exposure of the Defendants.

---

[5]     The indictment of Peter Armbruster increased the risk of significant delay in the event that he successfully moved to stay any discovery proceedings or trial against him in this parallel civil proceeding pending the outcome of the criminal action. Any such stay lies within the discretion of the District Court. *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970); *Clinton v. Jones*, 520 U.S. 681, 706-708 (1997).

12

While Lead Plaintiff averred that Roadrunner's financial results were indeed materially false and misleading – hence leading to the need for a Restatement – there was considerable risk as to whether or not it would be able to establish the requisite mental state (*scienter*) necessary to make those false statements actionable, especially since DiBlasi and Armbruster would seek to establish that they consulted with internal accountants and an outside auditor, or that accounting "errors" by lower level personnel lead to unwittingly false financial results.[6] Certainly, failing to properly account for "operating expenses" in a Company that had acquired and had to absorb numerous other companies presents a significant challenge and risk of proving *scienter* on the part of C-suite executives. The Company contended, among other things, that there were accounting "errors" requiring correction, occasioned by disparate reporting systems of acquired companies.

The determination of loss causation and damages, in particular, is fraught with risks and uncertainty, and necessarily requires expert testimony. Ultimately, with both sides retaining nationally recognized econometric experts regarding causation and damages, the assessments of such issues would necessarily and typically vary substantially, with "no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 236, 239 (3rd Cir. 2001). Complex accounting issues, and the *prima facie* elements of proving loss causation damages would be reduced to a "battle of the experts." A jury reaction to such expert testimony would be highly unpredictable and, "[i]n such a battle, [Lead] Counsel recognized the possibility that a jury could be swayed by experts for Defendants," and find that there were no damages, or only a fraction of the amount of damages Lead Plaintiff contended. *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001). If a jury agreed with Defendants' position, supported by an expert, that the stock drops Lead Plaintiff relied upon to prove loss

---

[6] This potential risk was magnified by the fact that the United States Attorney's Office initially indicted lower level managerial employees of Roadrunner and recited their activities and actions which, in retrospect, did not necessarily demonstrate that all of the accounting misstatements of the Company's operating expenses were the product of knowing fraud on the part of the speaking defendants. DiBlasi, the former CEO of Roadrunner, or Armbruster, its former CFO. Even the more recent indictment of Armbruster, which came after the execution of the Settlement Agreement, did not expressly implicate former CEO DiBlasi. *See generally*, Basser Decl. Ex. 3. Neither Rued or the HCI "control person" entities were indicted. *Id.*

13

causation and damages were caused by disclosures that were not fraud-related, or disclosed information for which *scienter* could not be established, damages could be significantly reduced or evaporate altogether. Additionally, even where the Lead Plaintiff could prevail at trial on the issues of loss causation and damages, that does not in any way disable the court from ultimately determining to grant judgment as a matter of law as to the issue of loss causation.[7]

"A bird in a hand is worth two in the bush," as they say. Here, securing $20 million immediately is extremely reasonable in contrast to the risks of litigation. And it is even more so considering that, even if Lead Plaintiff was wholly successful in motion practice, trial and appeals, the Class could ultimately be unable to fully collect on a substantial judgment, or perhaps not collect anything, as more fully discussed below. *See* Basser Decl. ¶¶ 53, 58.

### 2. The Complexity, Length and Expense of Further Litigation Supports Approval of the Settlement

Courts consider "the likely complexity, length and expense of the litigation," in determining the fairness of a settlement. *Isby*, 75 F.3d at 1199. This securities class action unquestionably involves complex factual and legal issues. There are various obstacles that the Class necessarily must confront that "flow from the complexities and difficulties inherently involved in shareholder securities fraud litigation." *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974). In the context of approving class action settlements, courts have long recognized that "stockholder litigation is notably difficult and notoriously uncertain." *Lewis v.*

---

[7] That is exactly what happened in the well-known jury trial in *In re Apollo Group Sec. Litig.* No. CV-04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Az. Aug. 4, 2008) ("Apollo"), where the District Court of Arizona tossed Plaintiff's verdict because it determined that loss causation was not sufficiently proven. ("JNOV") *See* Basser Decl. ¶ 86. Following the JNOV in *Apollo* in August 2008, an appeal was taken to the 9th Circuit Court of Appeals, which overturned the JNOV and ordered the verdict reinstated in June, 2010. The Defendants thereafter sought a writ of *certiorari* from the Supreme Court of the United States, which was denied in March, 2011. Altogether, between the initiation of the Apollo case and its ultimate conclusion, resolution, and payment of claims to shareholders, a period of more than ten years elapsed – from October 2004, through October 2012, plus the additional time for administration when distribution was finally made to claimants in April, 2015.

14

*Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); see *P'ship v. Pricewaterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("securities fraud litigation is long, complex and uncertain"); *see also Great Neck Capital*, 212 F.R.D. at 409 ("Shareholder class actions are difficult and unpredictable, and skepticism without optimistic forecasts of recovery is warranted."). This is especially true "in the wake of the PSLRA." *In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000).

This case is no different. But for the Settlement, this Action would have been fiercely contested by all parties, and even if Lead Plaintiff were able to win on every issue, the entire litigation process could span several years. Even if Lead Plaintiff were successful at trial, the Defendants would undoubtedly appeal, leading to additional delay and expense. Victory at trial is not a certainty or guarantee. Even if the Class were to recover a large judgment after trial, the additional delay, through post-trial motions and possible appeals – would deny the Class any recovery for years. *See AT&T Mobility I*, 789 F. Supp. 2d at 961 ("[w]ere the Class Members required to await the outcome of a trial and inevitable appeal … they would not receive benefits for many years, if indeed they received any at all"). *See also In re Warner Commc's Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985) ("even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself"). *Aff'd*, 798 F.2d 35 (2nd Cir. 1986). *See also* Basser Decl. at ¶¶ 37-52, 83-87, describing the complexity of this Action and potential duration.

Here, the Defendants' numerous motions to dismiss were were fully briefed before the Court and the issues were vigorously contested. There is no question that the Settlement secures a substantial and certain benefit for the Class in this complex and contested litigation, undiminished by further expense and without the delay, risk, and uncertainty of continued litigation.

### 3. The Defendants' Ability to Pay and Collectability Concerns Support Approval of the Settlement

Lead Plaintiff's and Lead Counsel's extensive analysis and consideration of the benefits of the $20 million settlement amount versus the attendant risks, uncertainty, potential delay, and challenges, included the assessment of the risk of collection of any judgment. There was, at the execution of the Memorandum of Understanding of November 19, 2018, and continues to be, a serious and probable risk of collecting even $20 million, let alone a sum that represents total victory on every issue of liability and the award of 100% of potential damages by the jury. Basser Decl. ¶¶ 57-61.

After commencement of the action on January 31, 2017, and continuing through the execution of the MOU, Roadrunner's financial profile consistently deteriorated, as indicated in the tables below. Its financial strength had become increasingly weaker and more fragile. It was experiencing a serious cash burn – from $38.813 million in cash and cash equivalents on hand as of March 31, 2017, to only $11.179 million as of December 31, 2018. Basser Decl. ¶ 60. This represented a significant and alarming burn rate.[8] In addition, the Company stock price had greatly deteriorated from $11.54 per share at the close of trading immediately prior to the January 30, 2017 announcement of the need for restatement, to a close of $0.5817 per share on November 16, 2018, just before execution of the MOU. These declines are illustrated in the charts below. The risk of either a voluntary or involuntary bankruptcy of the Company was significant. *It probably still remains.*

---

[8] The financial dilemma and cash burn continue. According to Roadrunner's Report on Form 10-Q for the period ending March 31, 2019, its cash and cash equivalents as of that date amount to just $4.612 million. Basser Decl. ¶ 60.

16





Roadrunner Transportation Services, Inc.
Liquidity
Cash and Cash Equivalents ($mln)
$45
$40
$35
$30
$25
$20
$15
$10
$5
$0
12/1/2016
3/1/2017
6/1/2017
9/1/2017
12/1/2017
3/1/2018
6/1/2018
9/1/2018
12/1/2018
Cash and Cash Equivalents

Roadrunner Transportation Services, Inc.
Public Equity Value
March 14, 2013 - November 19, 2018
Stock Price
$35
$30
$25
$20
$15
$10
$5
$0
Market Capitalization ($mil)
$1,200
$1,000
$800
$600
$400
$200
$0
March-13
June-13
September-13
December-13
March-14
June-14
September-14
December-14
March-15
June-15
September-15
December-15
March-16
June-16
September-16
December-16
March-17
June-17
September-17
December-17
March-18
June-18
September-18
Stock Price
Market Cap

In contrast, the Settlement Agreement represents approximately 87% of Roadrunner's market capitalization when the parties reached agreement on this principle term, (as of November 19, 2018), and approximately 108% of the Company's market capital immediately prior to a February 2019 "Rights Offering." It is a particularly fair settlement in light of Roadrunner's financial condition, which was so distressed that it had to conduct a "Rights Offering," at **$0.50** per share, which was completed in February 2019, in order to raise $450 million to pay off debt and stave off ultimate bankruptcy. Through the "Rights Offering," Roadrunner realized only approximately $30 million in net proceeds. Basser Decl. ¶ 60.

One cannot overlook the reality that there was an ever-continuing erosion of available insurance coverage and proceeds that were continuing to be exhausted due to the vigorous and multiple layers of defense of the Roadrunner Defendants and its former management by various counsel and law firms on numerous fronts, including with respect to this Action and proceedings, investigations and/or prosecutions by governmental entities.

The financial profile of the Defendants strongly suggests that securing $20 million immediately, without any collection issues, is certainly in the best interest of the Class Members, and that it is fair and reasonable.[9] The Settlement represents an excellent resolution of the Action and eliminates the risk that the Class might not otherwise recover if this litigation were to continue. In addition, the Settlement is well within the range of reasonableness compared to other securities fraud settlements. As reported by NERA Economic Consulting, between 2009 and 2018, the *median* settlement in securities fraud class actions ranged from $6-$13 million. *See* NERA Economic Consulting, Recent Trends in Securities Class Action Litigation:2018 Full Year Review (January 29, 2019). Basser Decl. ¶ 8, Ex. 4. It is also substantially higher than the *median* settlement amount achieved in cases involving allegations of violations of generally accepted

---

[9]     Given the Company's financial dilemma, and the prospect of bankruptcy that continues to loom, there are serious questions as to whether a successful verdict and judgment in this case for full damages, or even $20 million, could ever be collected against these Defendants, including the HCI limited liability entities.  Absent achieving the Settlement, the prospect of achieving merely a "pyrrhic victory" upon continued litigation was significant.

accounting principles ("GAAP") as reported by Cornerstone Research in a study entitled *"Accounting Class Action filings and Settlements, 2018 Review and Analysis,"* in Figure 19 at page 19 thereof, demonstrating that such amounts ranged from $10 million to $14.8 million in 2018 and $7.3 million to $12.3 million in the years 2009-2017. ("2018 Cornerstone Report"). Basser Decl. ¶ 8, Ex. 5. This supports approval.

### 4. The Reaction of Class Members Supports Approval of the Settlement

Court's also look to the reaction of the Class in support of approval of the settlement. *Wong*, 773 F.3d at 863. *See also AT&T Mobility I*, 789 F. Supp. 2d at 958. Here, pursuant to the Preliminary Approval Order, the Claims Administrator mailed, or is in the process of mailing, the Postcard Notice to over 46,400 potential Class Members and their nominees. Pappas Decl. ¶ 8, Basser Decl. Ex. 1.

In addition, the Claims Administrator caused Summary Notice to be published in the national edition of *Investor's Business Daily* and over the *PR Newswire* on July 29, 2019. *Id.* ¶ 11. The Claims Administrator also placed all of the relevant materials on its website and a website established for settlement administration, www.roadrunnersettlement.com. *Id.* ¶ 9. The Notice Program advised Class Members of their right to make a claim and the deadline to do so, or object or seek exclusion from the Class by September 3, 2019. Pursuant to and consistent with the Notice Program approved by the Court, potential Class Members were also advised of the Plan of Allocation and the fact that counsel would be moving for an award of attorneys' fees and reimbursement of expenses.

So far, not a single exclusion request or objection to the Settlement, the Plan of Allocation, or the fact that counsel shall request attorneys' fees and reimbursement of costs, has been made or received. This is particularly notable in light of the fact that Lead Plaintiff believes that institutional investors hold approximately 91.66% of Roadrunner's stock. *See Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) (finding relevant that there is no objection from institutional investors who held over 70% of the securities during the Class Period).

In the event that any exclusion requests or objections are received, Lead Plaintiff will address them in its Reply Brief to be filed in advance of the Final Approval Hearing.[10]

5. **Lead Counsel's Endorsement of the Settlement, Achieved through Arm's-length Negotiations Without Collusion and Recommended by a Respected, Reputable Private Mediator, Supports Approval**

It is well established that significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class. *Hiram Walker*, 768 F.2d at 889; *Isby*, 75 F.3d at 1200 (court placed significant weight on the opinion of plaintiff's well-respected attorneys); *Great Neck Capital*, 212 F.R.D. at 410 ("Opinion of competent counsel" weighs in favor of approval of a settlement). *See e.g. Armstrong*, 616 F.2d at 325 (in determining the fairness of the class settlement, "the court is 'entitled to rely heavily on the opinion of competent counsel'"); *Hispanics United*, 988 F. Supp. at 1170 (same); *see also Isby*, 75 F.3d at 1200 (District Court entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate); *Smoot v. Wieser Bros. Gen. Contr.*, No. 15-cv-424-jdp, 2016 U.S. Dist. LEXIS 57148, *15 (W.D. Wis. April 28, 2016) ("the court accepts counsel's opinion in favor of approval"); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) ("the court places significant weight on the unanimously strong endorsement of these settlements by plaintiffs' well-respected attorneys").

Additional factors that courts within the Seventh Circuit consider in granting final approval of a class action settlement are the absence of collusion in reaching a settlement, and the fact that it was reached by arm's-length negotiation, with the assistance of a mediator. Courts find "[a] strong presumption of fairness attaches to a settlement agreement when it is the result of this type of this [arm's-length] negotiation." *Great Neck Capital*, 212 F.R.D. at 410 (settlement reached after mediation) (citing *Anderson v. The Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991)).

---

[10]    In accordance with the Court's Preliminary Approval Order, Lead Counsel will respond to any objections on or before September 16, 2019 (seven days before the Final Approval Hearing). A list of any shareholders seeking exclusion will be included as an exhibit to the Proposed Final Judgment and Order of Dismissal with Prejudice that will be submitted with the Reply.

*See also Attention Tr. Fund v. Assisted Living Complex, Inc.*, No. 12-CV-884-JPS, 2013 U.S. Dist. LEXIS 199190, at *4 (E.D. Wis. Dec. 19, 2013) ("the Court further finds that the Settlement set forth in the stipulation is the result of arm's-length negotiations between experienced counsel representing the interest of the Settling Parties and is in the best interest of the Class"); *See also Hale v. State Farm Mut. Auto Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, *14 (S.D. Ill. Dec. 13, 2018) (arm's-length negotiation "strongly favors final approval"); *In re Portal Software, Inc., Sec. Litig.*, No. C-03-5138 VRW, 2007 WL1991529, at *6 (N.D. Cal. June 30, 2007) ([t]here is an initial presumption that a proposed settlement is fair and reasonable when it is "the product of arm's-length negotiations"). Unquestionably, "the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation," provides significant proof that approval is appropriate. *In re Indep. Energy Holdings PLC*, No. 00Civ.6689 (SAS), 2003 WL22244676, at *4 (SDNY Sept. 29, 2003).

The recommendations of experienced and qualified counsel favor approval of the Settlement. *See James Wm. Moore, Moore's Federal Practice § 23.164(4) (3d ed. 2004)* ("the more experience that class counsel possesses, the greater weight the court tends to attach to counsel's opinions on fairness, reasonableness and adequacy"). *See also Glass v. UBS Fin. Servs. Inc.*, No. C-06-4068 MMC, 2007 WL221862, at *5 (N.D. Cal. January 26, 2007), *aff'd*, 331 F.App'x 452 (9th Cir. 2009) ("the settlement was negotiated and approved by experienced counsel on both sides of the litigation, with the assistance of a well-respected mediator with substantial experience … [and] this supports approval of the settlement"). The attorneys who conducted the Settlement negotiations possess many years of experience in conducting complex litigation enabling them to appropriately assess the strengths and weaknesses of the case. *See* Basser Decl. ¶¶ 98-99 and the firm biography of Lead Counsel, attached as Ex. 6 to the Basser Decl. Thus, Class Counsel's decision should also be given great deference. *Armstrong*, 616 F.2d at 315.

This case was litigated and settled by highly experienced counsel on both sides of the case. Basser Decl. ¶ 98-100. Based on their extensive experience and expertise, Lead Counsel for the

Lead Plaintiff determined that the Settlement is in the best interest of the Class after weighing the substantial benefits of Settlement against the numerous obstacles and challenges presented by continued litigation, and the concerns relating to the prospects of collection. Basser Decl. ¶ 58. The Settlement was negotiated at arm's-length, including two joint mediations sessions before a highly respected and experienced former United States District Court Judge and mediator, the Honorable Layn R. Phillips, amid interim and subsequent negotiations. Judge Phillips held joint sessions with all parties present, as well as separate caucus sessions. Judge Phillips also met with insurance carriers. The parties exchanged several rounds of offers and counter offers in an attempt to resolve the dispute. The extensive negotiations – both before Judge Phillips and telephonically, including those that were independent of Judge Phillips – resulted in the execution of the MOU of November 19, 2018, and, after further negotiations regarding the specific terms fleshing out the full Settlement Agreement, the parties submitted the proposed Settlement to the Court on April 1, 2019.

Lead Counsel, Barrack, Rodos & Bacine, is one of the most experienced securities class action firms in the Nation.[11] The defense counsel law firms, including lead defense counsel from Greenberg Traurig, are also highly experienced and aggressive litigators. Judge Phillips is one of the most highly regarded mediators in America, with an impressive and extensive track record in securities fraud class actions.[12] Judge Phillips further supports the approval of this Settlement as

---

[11] The team of Barrack attorneys prosecuting this Action is comprised of partners Stephen R. Basser, Jeffrey A. Barrack and Samuel M. Ward – the exact same team that tried the well-known *In re Apollo Sec. Litig.* federal securities fraud class action that resulted in a unanimous verdict before a federal jury in 2008 after a lengthy trial coursing from November 2007 through January 2008.

[12] Recent settlements mediated by Judge Phillips include *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08-civ-5310-DAB, 2019 U.S. Dist. LEXIS 39807, *6 (S.D.N.Y. March 8, 2019); *Howard v. Liquidity Servs.*, No. 14-cv-1183-BAH, 2018 U.S. Dist. LEXIS 172321, *7 (D.D.C. Oct. 5, 2018); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143, *18-*19 (N.D. Tex. April 25, 2018); *Schueneman v. Arena Pharms., Inc.*, No. 3:10-CV-01959-CAB-BLM, 2018 U.S. Dist. LEXIS 63780, *17-*18 (S.D. Cal. April 12, 2018); *In re Rayonier Secs. Litig.*, No. 3:14-cv-1395-J-32JBT, 2017 U.S. Dist. LEXIS 167510, *8 (M.D. Fl. Oct. 5, 2017); and *In re Osi Sys.*, No. 14-cv-2910-NWF (MRWx), 2017 U.S. Dist. LEXIS 221033 (C.D. Cal. May 2, 2017).

fair and reasonable, as more fully noted in his declaration. *See* Declaration of Hon. Layn R. Phillips ("Phillips Decl.") ¶ 15, Basser Decl. Ex. 7. As the Court in *Hispanics United*, 988 F. Supp. at 1169 stated: "No one here has even suggested that this settlement is anything but the product of honest negotiations by otherwise vigorous adversaries. Furthermore, on this record, any such suggestion would be incredible."

Lead Counsel believes that this Settlement is fair, reasonable, and adequate in light of the circumstances of this Action. This belief is based on Lead Counsel extensive, deep familiarity with the factual and legal issues of this Action and of the risk associated with continued litigation as discussed herein.

### 6. The Stage of the Proceedings and the Amount of Formal and Informal Investigation or Discovery Support Approval

The Seventh Circuit also considers the stage of the proceedings and the level of discovery when approving a settlement. *See e.g. Wong*, 773 F.3d at 865. The "label of 'discovery' [either formal or informal] is not what matters … [i]nstead, the pertinent inquiry is what facts and information have been provided." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011) (citations and brackets omitted). When approving the similarly situated settlement in *Wong*, the Seventh Circuit noted: "although formal discovery had not commenced, [the plaintiff] had access to expansive public documents …" 773 F.3d at 864.

Here, Lead Counsel performed an extensive and detailed investigation. *See* Basser Decl. ¶ 13. A searching, detailed, and extensive investigation was necessary to develop claims that would stand a chance of surviving the pleading stage under the PSLRA. *Id.* at ¶ 47. Lead Counsel reviewed and analyzed the massive amount of publicly available information regarding Roadrunner's transportation business, acquisitions, independent driver contracts, and financial results. Lead Counsel had extensive dealings with forensic accountants with regard to Roadrunner's financial results and any subsequent Restatement. There were extensive communications with econometric and damages experts. Lead Counsel directly, and aided by the

services of a private investigation firm, interviewed witnesses and confidential sources to gather additional information. Lead Counsel further reviewed analyst reports, financial reports, and SEC filings. In addition, Lead Counsel conferred extensively with an expert in the trucking industry.

Ultimately, Lead Counsel prepared and filed an exhaustive, 161-page complaint. ECF No. 34. Basser Decl. ¶ 13. Thereafter, the Parties extensively briefed motions to dismiss – with Lead Plaintiff opposing five separate motions to dismiss that collectively covered numerous issues and contentions, thus providing further and more than ample insight into the strengths and weaknesses of the Action ECF Nos. 48-57, 59-60. Subsequent to execution of the MOU, Lead Counsel engaged in "confirmatory discovery"; including the review of financial reporting documentation from Roadrunner's audit committee investigation in connection with the financial results that were eventually restated. Basser Decl. ¶ 57.

Lead Counsel and Lead Plaintiff had sufficient information to properly evaluate the case and ultimately settled the action on terms very favorable to the Class, without the substantial uncertainty, delay, and expense of continued litigation. *See Mars Steel Corp.*, 834 F.2d at 684 ("rather than attempt to prescribe the modalities and negotiation, the district judge permissibly focused on the end result of the negotiation, which [is] more favorable to the Class than any class member could reasonably have expected"). Courts have recognized that "[t]hrough protracted litigation, the settlement Class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, No. C01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002).

The fact that formal discovery did not take place – thus saving significant expenses – or that Class Counsel did not pad its lodestar by incurring more time in taking discovery, does not weigh against the fairness and reasonableness of the Settlement that has been achieved. Many courts have approved the settlement of unpredictable securities class actions prior to incurring significant expenses through additional formal discovery and trial, and have commended counsel for such efforts. *See e.g., Glass v. UBS Fin. Servs., Inc.,* No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members

by settling the instant action promptly."), *aff'd,* 331 Fed. Appx. 452, 457 (9th Cir. 2009); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *In re TD Ameritrade Account Holder Litig*., Nos C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after filing of a motion to dismiss and prior to significant discovery); *Frias v. Dendreon Corp*., Civ. No. C11-1291JLR (W.D. Wash), Transcript of Final Approval Hearing Aug. 2, 2013, 4:11-18 ("I believe it is a compliment to the professionalism of both sides that they negotiated a settlement early on, saving higher attorney fees. Frankly, I wish I would see more of that. Therefore, I believe that settlement reached in an early stage of the proceeding, prior to a lot of discovery, is a valuable consideration, and therefore appropriate."). Basser Decl. Ex. 8. And here, the precarious financial condition of the Company counseled in favor of settling the case now. This factor also weighs in favor of this Court's approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Lead Plaintiff also seeks approval of the Plan of Allocation of the Settlement proceeds. The Plan of Allocation is set forth in the Notice. Assessment of a Plan of Allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable through the Settlement as a whole – the plan must be fair and reasonable. *See Great Neck Capital,* 212 F.R.D. at 410 (E.D. Wis. 2002). *See also Ikon*, 194 F.R.D. at 184.

An allocation formula, particularly a formula recommended by experienced Class Counsel, need have only a reasonable basis. *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, *11 (C.D. Cal. June 10, 2005). *See also White*, 822 F. Supp at 1420 (D. Minn.

25

1993) (approving Plan of Allocation recommended by "experienced and competent" Lead Counsel and developed with the assistance of an experienced damages expert).

In determining whether a proposed Plan of Allocation of settlement proceeds is fair and reasonable, court's give "considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved." *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *City of Providence v. Aeropostale, Inc.*, No. 11-cvi-7132 (CM)(GWG), 2014 U.S. Dist. LEXIS 64517, at *29 (S.D.N.Y. May 9, 2014) ("[a] plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel'") (citations omitted).

Here, the Plan of Allocation, which was described to members of the Settlement Class in detail pursuant to the Notice Program (Basser Decl. ¶ 72), was developed with the assistance of a well-recognized econometric and damages expert. *Id.* The Plan of Allocation provides formulas for calculating the recognized claim of each Settlement Class Member based on each such person's purchases and sales of Roadrunner's publicly traded common stock during the proposed Settlement Class Period and takes into account the impact of the alleged corrective disclosures of October 26, 2015, January 30, 2017 and January 31, 2018. Basser Decl. ¶¶ 71-75. The proposed Plan of Allocation does not discriminate against any Class Member or treat them disproportionately. Lead Plaintiffs will receive a *pro rata* distribution from the Net Settlement Fund based on the same formulas that apply to the recovery of all similarly situated members of the Settlement Class.

## V. SETTLEMENT CLASS MEMBERS HAVE BEEN PROVIDED THE BEST NOTICE PRACTICABLE

Settlement Class Members have been provided Notice pursuant to the Notice Program that has been approved by this Court and is consistent with the requirements of the PSLRA and Federal Rules of Civil Procedure. The Notice Program provides settlement class members with clear and detailed information regarding: (1) the nature of the Action and definition of the Settlement Class; (2) the essential terms and amount of the Settlement; (3) the Plan of Allocation of the Settlement;

(4) the maximum attorneys' fees and expenses that Lead Counsel might seek and the average cost per share if that amount was requested and approved by the Court; (5) the procedure for requesting opting out of the Settlement Class; (6) the procedure for objecting to the settlement; (7) the procedure for participating in the Settlement and filing a claim; (8) the date and place of the Settlement hearing and procedure for making an appearance at said hearing; and (9) the identification of Lead Counsel and the Claims Administrator to contact with questions regarding the Settlement.

"Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950)). "Although no rigid standards govern the contents of the notice to class members, the Court must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Windberger v. Kendrick*, 698 F.2d 61, 70, (2nd Cir. 1982) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) and *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975). *See also Ching v. Siemens Indus., Inc.,* No. C 11-4838 MEJ, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) (approving Notice that "adequately describes the nature of the action, summarizes the terms of the settlement, identifies the class and provides [them] instruction on how to opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear, understandable language").

Here, under and pursuant to the Notice Program, 46,400 copies of the Postcard Notice were, or are in the process of being, mailed to potential Settlement Class Members, brokerage firms, banks, and financial institutions. Pappas Decl. ¶ 8. Pursuant to the Preliminary Approval Order (ECF No. 85), a Summary Notice was published in *Investor's Business Daily* and issued over the *PR Newswire* on July 29, 2019, and the Notice, the subsequent Amended Notice, and Proof of Claim were posted on the website of the Claims Administrator, the website of Lead

27

Counsel, and on a website maintained by the Claims Administrator, www.roadrunnersettlement.com.[13] Pappas Decl. ¶ 9, 11. In addition, the Claims Administrator has maintained a toll-free telephone number for Class Members who have questions regarding the Notice. Pappas Decl. ¶ 10. The Notice Program satisfies all applicable standards, has already generated a significant response from the Class and should be approved.

## VI. FINAL CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT IS MERITED

By order dated June 19, 2019, the Court preliminarily certified the Settlement Class[14] for purposes of settlement and dissemination of Notice pursuant to the proposed Notice Program. ECF No. 85. The Notice Program has been adhered to. *See* Pappas Decl. The Settlement Class has been defined. Basser Decl. ¶ 2. Nothing has changed to after the propriety of the Court's certification, and no potential Settlement Class Members has objected to class certification.

Accordingly, and for all the reasons stated in Lead Plaintiff's Memorandum in Support of its Motion for Preliminary Approval of Settlement, filed herewith, it is requested that the Court (i) finally certify the Settlement Class for purposes of the Settlement; (ii) appoint Lead Plaintiff as

---

[13]    Pursuant to the Court's Minute Entry of August 6, 2019 (ECF No. 90), and subsequent Order of August 14, 2019 (ECF No. 92), on August 14, 2019, Lead Plaintiff, working in conjunction with Heffler, caused an Amended Notice to be disseminated via the websites of Lead Counsel, Heffler, and on a website maintained by Heffler, www.roadrunnersettlement.com.

[14]    The Settlement Class consists of:

all Persons who purchased or otherwise acquired Roadrunner's publicly traded common stock on the open market between March 14, 2013 and January 30, 2018, inclusive (the "Class Period"). Excluded from the Class are Defendants, any entity in which any Defendant has or had a controlling interest, Roadrunner's and/or HCI's current or former employees, directors, parents, subsidiaries, divisions, affiliates, officers, managers, general or limited partners, control persons or entities, the immediate family members of defendants DiBlasi, Armbruster, or Rued, any trust of which DiBlasi, Armbruster, or Rued is settlor or which is for the benefit of a member of their immediate family, and the legal representatives, heirs, successors, or assigns of any such excluded person or entity. Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

28

Class Representative; and (iii) appoint Lead Counsel, as Class Counsel. *See eg. Boring v. Bed, Bath & Beyond of Cal. LLC*, No. 12-cv-05259-JST, 2014 U.S. Dist. LEXIS 90258, at *4-5 (N.D. Cal. June 30, 2014) ("for the reasons discussed in the Court's Preliminary Approval Order, the Court finds that the requirements for certification of the conditionally certified settlement class have been met, and that the appointment of … Class Representative and … Class Counsel is proper").

## VII.    CONCLUSION

In conclusion, the Settlement and Plan of Allocation are fair, reasonable and adequate. Thus, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23 approve the Plan of Allocation; grant final certification of the Settlement Class; and enter a Final Judgment and Order of Dismissal with Prejudice.

DATED: August 19, 2019                                  /s/ STEPHEN R. BASSER
                                                               STEPHEN R. BASSER

                                   STEPHEN R. BASSER
                                   SAMUEL M. WARD
                                   600 West Broadway, Suite 900
                                   San Diego, CA  92101
                                   Telephone: (619) 230-0800
                                   Facsimile: (619) 230-1874

                                   JEFFREY A. BARRACK
                                   BARRACK, RODOS & BACINE
                                   3300 Two Commerce Square
                                   2001 Market Street
                                   Philadelphia, PA 19103
                                   Telephone: (215) 963-0600
                                   Facsimile: (215) 963-0838
                                   jbarrack@barrack.com

                                   CROSS LAW FIRM, S.C.
                                   Nola J. Hitchcock Cross
                                   Mary C. Flanner
                                   The Lawyers' Building

29

845 N. 11th Street
Milwaukee, WI 53233
Telephone: (414) 224-0000
Facsmile: (414) 273-7055
mflanner@crosslawfirm.com
njhcross@crosslawfirm.com


GADOW TYLER, PLLC
Blake Tyler, Esquire
Jason M. Kirschberg, Esquire
511 E. Pearl Street
Jackson, Mississippi 39201
Telephone: (601) 355-0654
Facsmile: (601) 510-9667
blake@gadowtyler.com
Jason@gadowtyler.com

*Counsel for Lead Plaintiff Public Employees'
Retirement System of Mississippi and the
Proposed Class*